COMMONWEALTH of Pennsylvania, Appellee

v.

Thomas W. HYLAND, Appellant.

Superior Court of Pennsylvania.

Argued Jan. 11, 2005.

Filed May 27, 2005.

Samuel Encarnacion, Lancaster, for appellant.

Alisa R. Hobart, Asst. Dist. Atty., Reading, for the Com., appellee.

Before: BENDER, GANTMAN, and JOHNSON, JJ.

GANTMAN, J.:

¶ 1 Appellant, Thomas W. Hyland, appeals from the judgment of sentence entered in the Berks County Court of Common Pleas, following his conviction for driving under the influence of alcohol ("DUI")[1] and related summary offenses.[2] We affirm Appellant's convictions but vacate the judgment of sentence and remand for re-sentencing.

¶ 2 The trial court opinion sets forth the relevant facts of the case as follows:

On October 18, 2002, at approximately 11:30 p.m., Sarah Arndt heard the sounds of a motor vehicle crash occurring near her home on St. Peters Road, Hereford Township, Berks County. She described the sound as an "initial hit" then silence followed by the sounds of the vehicle hitting the ground and of metal scraping across macadam. She then awakened her brother, Thomas, and told him that a car had crashed outside. Thomas then drove himself and his sister in his pickup truck to the crash site located approximately 100 yards from their house.

When they came upon the accident scene, the brother and sister saw an SUV lying on its driver's side and [Appellant] standing nearby. They saw no damage to the passenger side of the vehicle. [Appellant] approached the pickup truck and Thomas asked him if he was okay. [Appellant] replied that he was and asked Thomas for assistance in righting the SUV. Thomas said the two men would be unable to lift the vehicle. [Appellant] then asked for a ride to a friend's house located about 1½ miles from the accident scene. Thomas

complied with the request and drove [Appellant] to the home of Jay Geiger. When they reached their destination, [Appellant] entered the house and yelled for Mr. Geiger to get up. About three minutes later [Appellant] and Mr. Geiger exited the house and Thomas drove them back to the crash site where they came upon two men standing near a van. The men said that they had called the police and then assisted Thomas, Mr. Geiger and [Appellant] in flipping the SUV back on its wheels. [Appellant] and Mr. Geiger attempted to drive away but the vehicle was too severely damaged to be operable. The Arndts then returned to their home.

Troopers Kent Kaylor and John Finkbiner appeared shortly thereafter to investigate a report of a one-vehicle crash. Before they arrived, [Appellant] had asked Mr. Geiger to say that he, Geiger, had been driving the SUV and Mr. Geiger agreed to do so. Trooper Finkbiner first observed that a stone wall located along the northbound berm of St. Peters Road a short distance from the accident scene had been struck causing rocks and debris to be strewn across the roadway. He also saw scratch marks in the roadbed that stretched across the westbound lane and into and across the eastbound lane indicating that something had slid across St. Peters Road. Finally, he noticed that there was extensive damage to the driver's side of the SUV and that paint on that side of the vehicle had been scraped off exposing the metal underneath.

Trooper Finkbiner spoke with Mr. Geiger who told him that he had been the

1. 75 Pa.C.S.A. § 3731(a)(1). The Pennsylvania Legislature repealed Section 3731 on September 30, 2003, P.L. 120, No. 24, § 14, effective February 1, 2004. The new DUI statute is 75 Pa.C.S.A. § 3802.

2. The summary offenses included careless driving, 75 Pa.C.S.A. § 3714, driving on roadways laned for traffic, 75 Pa.C.S.A. § 3309(1), false reports, 75 Pa.C.S.A. § 3748, and restraint systems, 75 Pa.C.S.A. § 4581(a)(2).

driver of the SUV and the accident occurred when he had swerved to avoid hitting a deer. Trooper Kaylor, meanwhile, was speaking with [Appellant] who told him that Mr. Geiger had driven the SUV and he had been a passenger. Trooper Kaylor observed damage to the left side of [Appellant's] jeans and to [Appellant's] wallet, which was in a left pants pocket. He also saw injuries to the left side of [Appellant's] body. However, there were no injuries or clothing damage to [Appellant's] right side. Trooper Kaylor also smelled the odor of alcohol on [Appellant's] breath and observed that he was swaying slightly.

The troopers then had a private conversation. Trooper Kaylor pointed out that [Appellant] had injuries on the left side of his body. This aroused suspicions that [Appellant] may have been the driver. The trooper had also observed that Mr. Geiger had no injuries or clothing damage. Trooper Finkbiner again questioned Mr. Geiger warning him that he could face criminal charges if he lied. Mr. Geiger then admitted that he was not the driver of the vehicle.

When questioned by Trooper Finkbiner, [Appellant] could not give an explanation of his injuries. He admitted to drinking four beers that night and Trooper Finkbiner noticed the odor of alcohol on [Appellant's] breath, that he had glassy bloodshot eyes and he swayed from side to side. [Appellant] submitted to two field sobriety tests and failed them both. He refused to take a portable breath test. Trooper Finkbiner then arrested [Appellant] for DUI and transported him to the DUI processing center in Reading.

At the center, Berks County Detective Robert Johnson administered three field sobriety tests and [Appellant] failed two of them. [Appellant] refused to submit to a blood alcohol test. The Commonwealth charged [Appellant] with DUI and four summary offenses.

(Trial Court Opinion, entered August 11, 2004, at 1–4).

¶ 3 On October 25, 2002, the Commonwealth filed a criminal complaint against Appellant. Following a preliminary arraignment, Appellant posted $5,000.00 bail on November 18, 2002. Appellant applied for ARD consideration on December 3, 2002. On January 30, 2003, the Commonwealth denied Appellant's application for ARD but retained the hearing date of February 13, 2003 for his arraignment. Appellant's arraignment took place on February 13, 2003. At Appellant's request, a hearing was scheduled for April 29, 2003 on his proposed omnibus pre-trial motion.

¶ 4 Appellant then filed his omnibus pre-trial motion for writ of *habeas corpus* and for suppression of evidence on April 7, 2003.[3] Specifically, Appellant asserted the police did not have enough evidence to establish a *prima facie* case of DUI. Further, Appellant averred his inculpatory statements made following his arrest should be suppressed, because the police did not have probable cause to justify the arrest. Appellant's pre-trial hearing took place on April 29, 2003. The trial court denied Appellant's motion by order entered May 30, 2003. On July 3, 2003, the court scheduled Appellant's trial for December 9, 2003.

¶ 5 On December 3, 2003, Appellant filed a Rule 600 motion to dismiss on the grounds that more than 365 days had

---

**3.** Appellant's omnibus pre-trial motion was time-stamped April 10, 2003. The docket entries in the certified record, however, reflect that Appellant filed his omnibus pre-trial motion on April 7, 2003.

passed since the Commonwealth filed its criminal complaint, and the Commonwealth had failed to use due diligence to bring Appellant to trial within the required period. The trial court conducted a Rule 600 hearing on January 21, 2004. At the hearing, Trooper Finkbiner testified he was a member of the United States Marine Corps. Reserves, and had been deployed to Iraq on January 13, 2003. (N.T. Rule 600 Hearing, 1/21/04, at 4). Trooper Finkbiner did not return to the United States until May 2003. (*Id.* at 7). Trooper Finkbiner resumed work with the Pennsylvania State Police on August 1, 2003. (*Id.*) By order entered February 2, 2004, the trial court denied Appellant's Rule 600 motion.

¶ 6 On February 4, 2004, a jury found Appellant guilty of DUI. The trial court also found Appellant guilty of the related summary offenses.[4] On February 23, 2004, the court sentenced Appellant to three to twenty-three months' imprisonment in the Berks County Prison. Appellant timely filed post-sentence motions, in which he argued for the modification of his sentence, based on the trial court's failure to consider mitigating factors, such as Appellant's age, prior criminal record and good character. Further, Appellant requested a new trial because the trial court erred when it refused to allow evidence of Jay Geiger's prior convictions. Appellant also argued the court erred in denying his Rule 600 motion to dismiss. The trial court denied Appellant's post-trial motions by order entered May 11, 2004. This appeal followed.

¶ 7 Appellant raises the following three issues for our review:

WHETHER THE [TRIAL] COURT COMMITTED A MANIFEST ABUSE OF DISCRETION WHEN IT IMPOSED A SENTENCE AT THE EXTREME HIGH END OF THE AGGRAVATED RANGE OF THE SENTENCING GUIDELINES WHICH SENTENCE WAS CLEARLY UNREASONABLE, MANIFESTLY EXCESSIVE AND THE COURT FOCUSED ONLY ON THE SERIOUS NATURE OF THE OFFENSES TO THE EXCLUSION OF VARIOUS MITIGATING CIRCUMSTANCES WHICH WERE APPLICABLE TO THIS PARTICULAR [APPELLANT]?

WHETHER THE [TRIAL] COURT ERRED IN SUSTAINING THE COMMONWEALTH'S OBJECTION AND IN REFUSING TO PERMIT [APPELLANT] TO INTRODUCE RELEVANT MATERIAL EVIDENCE THAT THE COMMONWEALTH'S STAR WITNESS, JAY GEIGER, HAD A PRIOR DUI CONVICTION THEREBY PROVIDING HIM WITH A MOTIVE TO LIE TO THE POLICE IN ORDER TO IMPLICATE [APPELLANT] AND DEFLECT THE INVESTIGATION FROM HIMSELF?

WHETHER THE [TRIAL] COURT ERRED IN DENYING [APPELLANT'S] MOTION TO DISMISS FILED PURSUANT TO PA. R.CRIM.P. 600?

(Appellant's Brief at 4).

¶ 8 In his first issue, Appellant contends the aggravated-range sentence he received is unreasonable and inappropriate. Appellant asserts the sentencing court ignored "substantial mitigating circumstances," and the totality of these circumstances mandated a sentence "in or near" the standard range of the sentencing guidelines.

---

4. On May 6, 2004, the Commonwealth filed a motion to withdraw count five of its criminal information against Appellant, the summary offense of restraint systems. The court granted this motion by order entered May 7, 2004.

(*Id.* at 18). Additionally, Appellant maintains the sentencing court placed undue emphasis on the jury's decision not to accept Appellant's trial testimony as credible. Appellant concludes this Court must reverse and remand the matter for re-sentencing. Appellant's claim challenges the discretionary aspects of his sentence.

▮▮▮ ¶ 9 Challenges to the discretionary aspects of sentencing do not entitle an appellant to appellate review as of right. *Commonwealth v. Sierra,* 752 A.2d 910, 912 (Pa.Super.2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 1410 [now Rule 720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Martin,* 416 Pa.Super. 507, 611 A.2d 731, 735 (1992) (most internal citations omitted). Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing. *Commonwealth v. Mann,* 820 A.2d 788, 794 (Pa.Super.2003), *appeal denied,* 574 Pa. 759, 831 A.2d 599 (2003).

▮▮▮ ¶ 10 Additionally, an appellant must invoke the appellate court's jurisdiction by including in his brief a separate concise statement demonstrating that there is a substantial question as to the appropriateness of the sentence under the Sentencing Code. *Commonwealth v. Mouzon,* 571 Pa. 419, 812 A.2d 617, (2002); *Commonwealth v. Tuladziecki,* 513 Pa. 508, 522 A.2d 17 (1987); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal 'furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases.'" *Commonwealth v. Williams,* 386 Pa.Super. 322, 562 A.2d 1385, 1387 (1989) (*en banc*) (emphasis in original).

▮▮▮ ¶ 11 The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Anderson,* 830 A.2d 1013 (Pa.Super.2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra, supra* at 912–13 (quoting *Commonwealth v. Brown,* 741 A.2d 726, 736 (Pa.Super.1999) (*en banc*), *appeal denied,* 567 Pa. 755, 790 A.2d 1013 (2001)). A substantial question is raised where an appellant alleges the sentencing court erred by imposing an aggravated range sentence without consideration of mitigating circumstances. *Commonwealth v. Felmlee,* 828 A.2d 1105 (Pa.Super.2003) (*en banc*).

▮▮▮ ¶ 12 Here, Appellant's post-sentence motion and Rule 2119(f) statement assert the sentencing court imposed a sentence at the top end of the aggravated range without considering mitigating circumstances. Appellant insists the court instead focused on the "serious nature of the offense" as well as the jury's resolution of conflicting testimony in favor of the Commonwealth. (Appellant's Brief at 10).

As presented, Appellant appears to raise a substantial question as to the discretionary aspects of his sentence. *See id.* Thus, we will review his claim.

¶ 13 Our standard of review concerning the discretionary aspects of sentencing is as follows:

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa.Super.1999) (*en banc*) (internal quotation marks and citations omitted).

¶ 14 "[I]n fashioning [a] sentence, a judge is obligated 'to follow the general principle that the sentence imposed should call for confinement that is consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant.' " *Commonwealth v. Monahan,* 860 A.2d 180, 184 (Pa.Super.2004). "[A] court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin,* 804 A.2d 1, 10 (Pa.Super.2002), *appeal denied,* — Pa. —, 868 A.2d 1198 (2005) (citing *Commonwealth v. Burns,* 765 A.2d 1144 (Pa.Super.2000), *appeal denied,* 566 Pa. 657, 782 A.2d 542 (2001)). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Griffin, supra. See also*

*Commonwealth v. Wise,* 848 A.2d 932 (Pa.Super.2004), *appeal denied,* — Pa. —, 863 A.2d 1146 (2004) (holding sentencing court abused its discretion in utilizing thirteen-year-old DUI conviction to justify imposing aggravated-range sentence following subsequent DUI conviction).

¶ 15 Instantly, the court conducted Appellant's sentencing hearing on February 23, 2004. At that time, the Commonwealth announced Appellant's prior record score was zero. Nevertheless, the Commonwealth sought a sentence in the aggravated range, because Appellant "failed to stand up and do the right thing and take responsibility for his actions in every possible stage in the proceedings.... " (N.T. Sentencing, 2/23/04, at 3). Appellant requested the mandatory minimum sentence (48 hours).

¶ 16 Focusing on Appellant's attempt to blame the motor vehicle accident on Mr. Geiger, the sentencing court commented as follows:

> Well, I got to admit, I think when the man—and [Appellant] did try to place the blame on another man, and that certainly exacerbates the case above the normal. I don't blame [Appellant] for going to trial. Of course not.
>
> But the jury, after they heard everything, found that he was not telling the truth and that the—in fact, the perpetrator of the action in question was [Appellant].
>
> * * *
>
> [Appellant] doesn't have much going for him. I'm going to have to, in this particular case, without joy in my heart, put on a sentence I think the nature of the case deserves.
>
> Therefore, the sentence is going to be that [Appellant] be committed for a period not less than three months nor more

than twenty-three months to the Berks County Prison effective this date.

* * *

The rationale for doing this is that the court is considering the nature of this conduct of [Appellant] caused or threatened harm to himself and others, the nature and circumstances of the conduct shows a disregard for the safety of the community.

I believe [Appellant] is in need of rehabilitation that will be provided most effectively by his commitment to an Institution. Obviously, we conclude a lesser sentence would depreciate the seriousness of the crime to [Appellant]. Confinement is more likely to contribute to rehabilitation than probation.

The record should reflect the court has considered the sentencing guideline and determined that the combination of all the above circumstances together with the remarks made by the District Attorney mandate a sentence in the aggravated range.

(*Id.* at 5–7.)

■ ¶ 17 These comments indicate the sentencing court focused exclusively on Appellant's failed attempt to blame the accident on Mr. Geiger, the seriousness of the offense, and Appellant's need for rehabilitation. The court virtually ignored Appellant's lack of any prior criminal record, his age, and his personal characteristics, and his life situation. In light of these facts, we vacate Appellant's judgment of sentence and remand for re-sentencing so that the court might consider the mitigating circumstances of this case in balance with what it considers aggravating factors. *See Rodda, supra; Wise, supra; Griffin, supra.* Compare *Felmlee, supra* (stating court reviewed defendant's history, noting defendant was on parole at time of offense; judge discussed defendant's two juvenile adjudications for burglary and multiple summary offenses, many dealing with reckless conduct with motor vehicle, placing people in danger as happened in instant offense; court also reviewed pre-sentence report and noted certain mitigating facts including fact that defendant had finished high school, was trying to go to college, and was employed; court balanced these factors but concluded that aggravated range sentence was warranted because of dangerous nature of conduct and defendant's past criminal history; court found state sentence it imposed offered defendant opportunity to go to boot camp which it believed would serve as benefit to defendant).

■ ¶ 18 In his second issue, Appellant asserts his theory of the case at trial was that Jay Geiger had consumed alcohol, driven the SUV, and crashed on St. Peters Road on October 18, 2002. Mr. Geiger initially told police he had operated the SUV; however, he recanted. Later, he testified he was not in the SUV at the time of the crash. Appellant maintains his trial counsel should have been permitted to cross-examine Mr. Geiger about Mr. Geiger's prior convictions for DUI and leaving the scene of an accident. Appellant avers these questions were admissible to impeach Mr. Geiger by showing that he had "a motive to lie or in other words a bias...." (Appellant's Brief at 23). The trial court, however, prohibited counsel from pursuing this line of questioning. Appellant concludes the trial court abused its discretion by preventing the introduction of evidence concerning Mr. Geiger's alleged bias. Under the circumstances of this case, we cannot agree.

■ ¶ 19 "Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear

abuse of discretion." *Commonwealth v. Hernandez,* 862 A.2d 647, 650 (Pa.Super.2004) (quoting *Commonwealth v. Bracey,* 831 A.2d 678, 681 (Pa.Super.2003), *appeal denied,* 577 Pa. 685, 844 A.2d 551 (2004)). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Carter,* 861 A.2d 957, 961 (Pa.Super.2004) *(en banc)* (quoting *Commonwealth v. Herb,* 852 A.2d 356, 363 (Pa.Super.2004)).

 ¶ 20 Pennsylvania Rule of Evidence 609 addresses impeachment of a witness by evidence of conviction as follows:

### Rule 609. Impeachment by evidence of conviction of crime

(a) General Rule

For the purpose of attacking the credibility of any witness, evidence that the witness has been convicted of a crime, whether by verdict or by plea of guilty or *nolo contendere,* shall be admitted if it involved dishonesty or false statement.

(b) Time Limit

Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction....

\* \* \*

Pa.R.E. 609(a)–(b). "Even if a crime would not in and of itself be *crimen falsi,* we would consider it as such if it was committed in part through the use of false written or oral statements." *Commonwealth v. Vitale,* 445 Pa.Super. 43, 664 A.2d 999 (1995), *appeal denied,* 544 Pa. 607, 674 A.2d 1071 (1995).

 ¶ 21 Additionally, "Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish the witness' motive for testifying." *Commonwealth v. Robinson,* 507 Pa. 522, 526, 491 A.2d 107, 109 (1985). "A witness may be cross-examined as to any matter tending to show the interest or bias of that witness." *Commonwealth v. Nolen,* 535 Pa. 77, 83, 634 A.2d 192, 195 (1993). "It is particularly important that, where the determination of a defendant's guilt or innocence is dependent upon the credibility of a prosecution witness, an adequate opportunity [must] be afforded to demonstrate through cross-examination that the witness is biased." *Commonwealth v. Birch,* 532 Pa. 563, 566, 616 A.2d 977, 978 (1992).

Thus, in *Commonwealth v. Evans,* 511 Pa. 214, 512 A.2d 626 (1986), the Pennsylvania Supreme Court declared:

[W]henever a prosecution witness may be biased in favor of the prosecution because of outstanding criminal charges or because of any non-final criminal disposition against him within the same jurisdiction, that possible bias, in fairness, must be made known to the jury. Even if the prosecutor has made no promises, either on the present case or on other pending criminal matters, the witness may hope for favorable treatment from the prosecutor if the witness presently testifies in a way that is helpful to the prosecution. And if that possibility exists, the jury should know about it. The jury may choose to believe the witness even after it learns of actual promises made or possible promises of leniency which may be made in the future, but the defendant, under the right guaranteed in the Pennsylvania Constitution to confront witnesses against him, must have the opportunity at least to raise a doubt in the mind

of the jury as to whether the prosecution witness is biased. It is not for the court to determine whether the cross-examination for bias would affect the jury's determination of the case.

*Id.* at 224–225, 512 A.2d at 631–632 (footnote omitted). Similarly, the Superior Court has observed:

As a general rule, defense counsel must be permitted to cross-examine a Commonwealth witness on possible favorable treatment or expectations of such favorable treatment in exchange for testimony for the prosecution. Failure to allow cross-examination to reveal possible bias of this nature is error and will require a new trial unless the error can be shown to have had no impact on the outcome of the case. The principle upon which this rule is premised is that the jury should have the opportunity to consider information concerning possible ulterior motives on the part of the witness in order accurately to assess the witness' credibility.

*Commonwealth v. Buksa,* 440 Pa.Super. 305, 655 A.2d 576, 579–580 (1995), *appeal denied,* 544 Pa. 642, 664 A.2d 972 (1995).

▇ ¶ 22 The court's limitation of or failure to allow cross-examination of the prosecution's witness to reveal possible bias of this nature will require a new trial, unless the error did not control the outcome of the case. *Id.* If the error did not control the outcome of the case, however, the error is deemed harmless. *See Commonwealth v. Gentile,* 433 Pa.Super. 381, 640 A.2d 1309 (1994), *appeal dismissed as improvidently granted,* 544 Pa. 181, 675 A.2d 710 (1996) (holding error in excluding evidence of bias was deemed harmless where that witness' testimony was confirmed by other witnesses at trial). *See also Nolen, supra* (rejecting rule that trial

court's refusal to permit cross-examination as to witness' possible bias is always reversible error; after reviewing record, Court determined error was harmless where witness' testimony was corroborated by other evidence); *Commonwealth v. Culmer,* 413 Pa.Super. 203, 604 A.2d 1090, 1095 (1992) (holding trial court's refusal to permit defendant to cross-examine victim on pending adult charge and juvenile charges which were open as of time of shooting but were closed at time of trial was harmless error, where shooting victim's testimony was corroborated by others and inference of possible bias was tenuous).

¶ 23 Instantly, Appellant's trial counsel attempted to cross-examine Mr. Geiger concerning his prior convictions for DUI and leaving the scene of an accident. These crimes, however, were not *crimen falsi. See Vitale, supra;* Pa.R.E. 609.

¶ 24 Further, the trial court noted:

Here, neither of Mr. Geiger's DUI convictions was pending at the time of [Appellant's] trial. Both convictions were more than seven years old. Mr. Geiger received a citation for leaving the scene of an accident but that had been issued three or four years before the trial. Therefore, those offenses were irrelevant to [show] witness bias arising out of favorable treatment by the prosecution. Moreover, the predicate for using these convictions—that Mr. Geiger was intoxicated and feared arrest—is not borne out be the record. Mr. Geiger admitted to having consumed a few beers on the afternoon of October 23, 2002, but this occurred hours before the accident happened. Trooper Finkbiner testified that he stood within three feet of Mr. Geiger at the accident scene and observed no *indicia* of alcohol intoxication. Even [Appellant]—the only witness who presented evidence that Mr. Geiger had

been drinking near the time of the accident—testified that Mr. Geiger did not appear intoxicated while he was allegedly driving [Appellant's] SUV and, in fact, he would not have allowed Mr. Geiger to drive the vehicle if he had thought the witness was intoxicated. Furthermore, according to [Appellant's] testimony, Mr. Geiger did not flee the scene of the accident. [Appellant] said it was "more than implied" that Mr. Geiger left to seek help to move the SUV off St. Peters Road.

(Trial Court Opinion at 11–12) (internal citations omitted). Therefore, evidence of Mr. Geiger's prior convictions was not admissible under Pa.R.E. 609, or a proper subject for cross-examination to demonstrate the witness' bias arising out of hope for favorable treatment by the prosecution.

¶ 25 Moreover, even if the court did err in precluding the cross-examination of Mr. Geiger as to his prior criminal record, we would have to conclude that error was harmless. *See Gentile, supra.* Here, both Sarah Arndt and Thomas Arndt testified they arrived at the scene within minutes of the accident. Appellant was the only person at the scene. The testimony of Sarah and Thomas Arndt places Appellant at the scene, alone on St. Peters Road shortly after the crash. Further, Thomas Arndt testified that he drove Appellant to Mr. Geiger's home **after** the crash.

¶ 26 Additionally, the investigating officer noted extensive damage to the driver's side of Appellant's vehicle. Appellant had injuries to the left side of his body and damage to his clothing on the left side, consistent with the evidence that he had been driving the vehicle when it flipped over on the driver's side and slid across the macadam road surface. Mr. Geiger had no injuries.

¶ 27 The additional evidence in this case supports the jury's determination that Ap-

pellant crashed the SUV on October 18, 2002. Therefore, we conclude the trial court's decision to preclude cross-examination concerning Mr. Geiger's potential bias does not in and of itself necessitate a new trial, because his testimony was not the sole evidence against Appellant and, therefore, cannot be said to have controlled the outcome of the case. *See id.* Thus, Appellant's second issue merits no relief. *See Carter, supra; Hernandez, supra.*

¶ 28 In his third issue, Appellant asserts the mechanical run date for his case was October 25, 2003. Appellant concedes he instigated a fifty-one day delay by filing an omnibus pretrial motion, which yielded an adjusted run date of December 15, 2003. Appellant insists, however, that the Commonwealth did not exercise due diligence in bringing his case to trial. Appellant contends the Commonwealth could have gone to trial without testimony from Trooper Finkbiner, who was on active duty with the U.S. Marines in the Persian Gulf for five months in 2003. Further, Appellant argues Trooper Finkbiner and Jay Geiger were available to testify in August 2003, before the expiration of the December 15, 2003 adjusted run date. Appellant insists the Commonwealth did not make a "reasonable effort" to bring him to trial before the adjusted run date. Appellant concludes this Court must reverse the trial court's order denying Appellant's Rule 600 motion to dismiss. We disagree.

¶ 29 "In evaluating Rule 600 issues, our standard of review of a trial court's decision is whether the trial court abused its discretion." *Commonwealth v. Hunt,* 858 A.2d 1234, 1238 (Pa.Super.2004) (*en banc*). Further, we note:

The proper scope of review . . . is limited to the evidence on the record of the Rule 600 evidentiary hearing, and the findings of the trial court. An appellate court

must view the facts in the light most favorable to the prevailing party. Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions: (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Id.* at 1238–39 (internal citations and quotation marks omitted).

 ¶ 30 Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600. Prompt Trial**

\* \* \*

(A)(3) Trial in a court case in which a written complaint is filed against the defendant, when the defendant is at liberty on bail, shall commence no later than 365 days from the date on which the complaint is filed.

\* \* \*

(C) In determining the period for commencement of trial, there shall be excluded therefrom:

(1) the period of time between the filing of the written complaint and the defendant's arrest, provided that the defendant could not be apprehended because his or her whereabouts were unknown and could not be determined by due diligence;

(2) any period of time for which the defendant expressly waives Rule 600;

(3) such period of delay at any stage of the proceedings as results from:

(a) the unavailability of the defendant or the defendant's attorney;

(b) any continuance granted at the request of the defendant or the defendant's attorney.

\* \* \*

(G) For defendants on bail after the expiration of 365 days, at any time before trial, the defendant or the defendant's attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon.

If the court, upon hearing, shall determine that the Commonwealth exercised due diligence and that the circumstances occasioning the postponement were beyond the control of the Commonwealth, the motion to dismiss shall be denied and the case shall be listed for trial on a date certain.

\* \* \*

Pa.R.Crim.P. 600. "Rule 600 generally requires the Commonwealth to bring a defendant on bail to trial within 365 days of the date the complaint was filed." *Hunt, supra* at 1240. A defendant on bail after 365 days, but before trial, may apply to the court for an order dismissing the charges with prejudice. *Id.* at 1240–41; Pa. R.Crim.P. 600(G). However, to obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges. *Hunt, supra* at 1243.

 ¶ 31 In assessing a Rule 600 claim, the court must exclude from the time for commencement of trial any periods during which the defendant was unavailable, in-

cluding any continuances the defendant requested and any periods for which he expressly waived his rights under Rule 600. Pa.R.Crim.P. 600(C). "[T]he mere filing of a pre-trial motion by a defendant does not automatically render him unavailable. Rather, a defendant is unavailable for trial only if a delay in the commencement of trial is caused by the filing of the pretrial motion." *Commonwealth v. Hill,* 558 Pa. 238, 254, 736 A.2d 578, 587 (1999).

¶ 32 In the context of Rule 600, there is a distinction between "excludable time" and "excusable delay":

"Excludable time" is defined in Rule 600(C) as the period of time between the filing of the written complaint and the defendant's arrest, ...any period of time for which the defendant expressly waives Rule 600; and/or such period of delay at any stage of the proceedings as results from: (a) the unavailability of the defendant or the defendant's attorney; (b) any continuance granted at the request of the defendant or the defendant's attorney. "Excusable delay" is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence.

*Hunt, supra* at 1241 (internal citations omitted).

¶ 33 If the Commonwealth attempts to bring a defendant to trial beyond the 365 day-period prescribed by Rule 600, and the defendant files a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay. *Id.*; Pa.R.Crim.P. 600(C), (G). Even where a violation of Rule 600 has occurred, we recognize:

[T]he motion to dismiss the charges should be denied if the Commonwealth exercised due diligence and...the circumstances occasioning the postpone-

ment were beyond the control of the Commonwealth.

Due diligence is a fact-specific concept that must be determined on a case-by-case basis. Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a **reasonable** effort has been put forth.

Reasonable effort includes such actions as the Commonwealth listing the case for trial prior to the run date to ensure that defendant was brought to trial within the time prescribed by Rule 600.

*Hunt, supra* at 1241–42 (internal citations and quotation marks omitted) (emphasis in original). *See also Hill, supra* (finding Commonwealth exercised due diligence when it initially scheduled trial well within time requirements of Rule [600] but trial was delayed by actions of defendant beyond Commonwealth's control).

¶ 34 In the instant case, the following summarizes the delays, through December 3, 2003, in bringing this case to trial:

- 10/25/02—Complaint filed.
- 11/18/02—Appellant released on bail.
- 12/3/02—Appellant requested consideration for accelerated rehabilitative disposition ("ARD").
- 1/29/03—Commonwealth denied Appellant's application for ARD but retained the hearing date of 2/13/03 for arraignment
- 2/13/03—Appellant is arraigned. Appellant also requests hearing concerning counsel status and ARD. Hearing scheduled for 2/27/03.
- 2/25/03—Appellant requests hearing concerning omnibus pre-trial motion. Hearing scheduled for 4/29/03.
- 4/10/03—Appellant files omnibus pre-trial motion.

- 4/29/03—Pre-trial hearing conducted. Appellant also requests case status hearing. Hearing scheduled for 6/19/03.
- 5/30/03—Court denies Appellant's omnibus pre-trial motion.
- 6/19/03—Appellant requests case status hearing. Hearing scheduled for 7/3/03.
- 7/3/03—Court schedules trial for 12/9/03.
- 12/3/03—Appellant files motion to dismiss charges pursuant to Rule 600.
- 1/21/04—Court conducts Rule 600 hearing.
- 2/2/04—Court denies Appellant's Rule 600 motion.
- 2/3/04—Appellant's trial commences.

¶ 35 On February 25, 2003, Appellant requested a hearing on his intended omnibus pre-trial motion. Appellant's requested hearing was immediately scheduled for April 29, 2003. Appellant filed his pre-trial motion on April 10, 2003. The hearing was conducted as scheduled on April 29, 2003 and the court denied Appellant's motion on May 30, 2003. Appellant concedes a delay of 51 days covering the period between April 10, 2003 and May 30, 2003. The relevant excludable period attributable to Appellant's omnibus pre-trial motion, however, actually started on February 25, 2003, when he asked for a hearing date on the motion he intended to file. Thus, the excludable time is not 51 days (from April 10, 2003 to May 30, 2003). Instead, the relevant excludable time is 94 days. The adjusted run date on Appellant's case (due solely to Appellant's pre-trial motion) was January 27, 2004. Even if we were to consider only Appellant's conceded 51 days, the adjusted run date would have been December 15, 2003.

¶ 36 Trial in this case was scheduled to commence on December 9, 2003, well within either adjusted run date. Appellant thwarted the scheduled trial date of December 9, 2003 by filing his Rule 600 motion on December 3, 2003. Appellant did not have a valid Rule 600 motion when he filed it; in fact, the motion was premature. *See Hunt, supra.* Nevertheless, the time taken for the decision on Appellant's motion is also excludable. The Rule 600 motion was decided on February 2, 2004. Thus, another 61 days is excludable. Appellant's trial commenced on February 3, 2004, before Appellant's case reached the new adjusted run date of either February 14, 2004 or March 28, 2004, depending on the respective calculations previously set forth. *See id.*

¶ 37 Moreover, the trial court provided that a period of excusable delay was occasioned by the absence of Trooper Finkbiner:

Trooper Finkbiner testified at the Rule 600 hearing that he is a member of the Marine Reserves and was notified by his unit on January 11, 2003, that he was to be deployed to Iraq. The trooper left on January 13, 2003, and did not return to the United States until the middle of May 2003. He was on active duty until the end of June 2003 and had military leave from the Pennsylvania State Police for June and part of July as well as additional time off from work thereafter. The trooper returned to work on August 1, 2003. Trooper Finkbiner was unavailable for court for a total of 202 days. The Commonwealth cannot be held to be acting without due diligence when a witness becomes unavailable due to circumstances beyond its control. Certainly, Trooper Finkbiner's deployment to the Middle East was a matter over which the Commonwealth had no control. The case could not proceed in his absence. Trooper Finkbiner was an essential witness to the Commonwealth's case. He

was the police prosecutor, affiant and the lead investigator; Trooper Kaylor assisted in the investigation. He conducted filed sobriety tests of [Appellant] at the scene and also took photographs of [Appellant's] injuries and clothing damage. We also note for Rule 600 purposes that [Appellant] filed a pretrial motion on April 10, 2003, and the court did not render a decision on the motion until May 30, 2003, a period of 51 days of excludable time. We are satisfied that the Commonwealth used due diligence in bringing [Appellant] to trial and that we committed no error in denying [Appellant's] Rule 600 motion.

(Trial Court Opinion at 8–9) (internal citations omitted). We accept the trial court's due diligence analysis, and conclude that the trial court properly denied Appellant's Rule 600 motion. *See Hunt, supra.* Accordingly, we affirm Appellant's convictions, but vacate the judgment of sentence and remand for re-sentencing.

¶ 38 Judgment of sentence vacated. Case remanded with instructions. Jurisdiction is relinquished.

¶ 39 Judge BENDER Files a Concurring and Dissenting Opinion.

BENDER, J., Concurring and Dissenting:

¶ 1 While I agree with the majority's disposition and analysis as to Appellant's second and third issues, I must note my dissent as to the majority's resolution of the sentencing issue.

¶ 2 I first note that the sentence is within the sentencing guidelines, and as such, should be disturbed only in rare instances. In this case, Appellant attempted to coerce Mr. Geiger into accepting responsibility for his actions on the night in question. Then at trial, in the face of the testimony of Mr. Geiger, Sarah Arndt and Thomas Arndt, Appellant swore under oath that he was not driving. He attempted to sell to the jury his story that Mr. Geiger was the driver. This not only shows contempt for the process, it shows a lack of a grip on reality. Why would such a defense be offered in light of the testimony of the disinterested witnesses, Mr. and Mrs. Arndt? Does Appellant feel that he can offer a preposterous and obviously false story and then walk away from responsibility for his actions?

¶ 3 The trial court in my opinion was correct when it stated "I believe [Appellant] is in need of rehabilitation that will be provided most effectively by his commitment to an institution." N.T. Sentencing, 2/23/04, at 7. I believe that the short period of commitment will give Appellant a chance to consider his actions and hopefully lead to some degree of rehabilitation.

¶ 4 In any event, I would not conclude that the sentence in question constitutes a "manifest abuse of discretion." *Commonwealth v. Rodda,* 723 A.2d 212, 214 (Pa.Super.1999) (en banc). Accordingly, I would affirm the judgment of sentence.