J-A12025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| JONATHAN CORDENNER, | |
| Appellant | No. 2011 EDA 2015 |

Appeal from the Judgment of Sentence June 8, 2015
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0000085-2014

BEFORE: BENDER, P.J.E., PANELLA, J., and STEVENS,[*] P.J.E.

MEMORANDUM BY PANELLA, J. **FILED SEPTEMBER 23, 2016**

Appellant, Jonathan Cordenner, appeals from the judgment of sentence entered by the Honorable Cheryl L. Austin, Court of Common Pleas of Montgomery County. Cordenner contends that the Commonwealth violated his right against unlawful search and seizure, as well as his right to a speedy trial. After careful review, we affirm.

The trial court summarized the relevant factual and procedural history as follows.

> On November 21, 2013 at approximately 11:13 p.m., Montgomery Township Patrol Officer Jason English was on duty when he observed [Cordenner]'s Toyota Corolla pull into an abandoned lot. Officer English observed [Cordenner] stop in the abandoned lot, where he remained for a period of time. Officer

---

[*] Former Justice specially assigned to the Superior Court.

English drove into the abandoned lot to determine if [Cordenner] needed assistance. Officer English then got out of the unmarked police cruiser and approached [Cordenner's] stopped vehicle.

Officer English initiated a conversation with [Cordenner], and inquired why he was in the abandoned lot. [Cordenner] stated that he was looking for fast food, preferably an Arby's. During this conversation, Officer English noticed a substance in the vehicle, which he believed was marijuana. [Cordenner] also smelled of alcohol. Officer English administered field sobriety tests and a portable breath test, both of which indicated [Cordenner] was intoxicated. Subsequently, Officer English arrested [Cordenner] for [d]riving [u]nder the [i]nfluence ("DUI").

On November 21, 2013, a criminal complaint was filed against [Cordenner], charging him with DUI and [p]ossession of [d]rug [p]araphernalia. [Cordenner] waived his right to a [p]reliminary [h]earing on December 27, 2013. A [f]ormal [a]rraignment, scheduled for February 12, 2014, was also waived by [Cordenner]. At the April 24, 2014 [p]re-[t]rial [c]onference, the case was continued and was subsequently put on the trial list for July 17, 2014.

On July 15, 2014, [Cordenner] filed a [m]otion to [s]uppress [e]vidence. A hearing for [Cordenner's] motion was scheduled for October 2, 2014. On September 10, 2014, [the trial court] issued an order postponing the hearing until October 27, 2014. On October 27, 2014, [the trial court] heard [Cordenner's] [m]otion to [s]uppress and the matter was taken under advisement. On November 20, 2014, [the trial court] issued an order denying [Cordenner's] [m]otion to [s]uppress.

On December 11, 2014, this matter was heard at the [c]all of the [t]rial [l]ist and a bench trial was subsequently scheduled for March 18, 2015. Prior to trial, [Cordenner] moved for this case to be dismissed because the Commonwealth violated Rule 600. On that same day, [the trial court] held a hearing to decide the Rule 600 issue. [The trial court] denied [Cordenner's] [m]otion to [d]ismiss, via memoranda order, on March 20, 2015.

On June 8, 2015, the next available trial date, [the trial court] held a bench trial and [Cordenner] was found guilty on both counts. After trial, [Cordenner] was sentenced to 72 hours to 6 months of incarceration followed by 6 months of probation.

Trial Court Opinion, 9/18/15 at 1-2. This timely appeal followed.

On appeal, Cordenner raises two issues. First, Cordenner argues that the trial court erred by denying his suppression motion because Officer English's initial approach of Cordenner's vehicle constituted an investigative detention necessitating reasonable suspicion. *See* Appellant's Brief, at 4, 8, 10.

Our scope and standard of review in considering the trial court's denial of a motion to suppress is as follows.

> [An appellate court's] standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Because the Commonwealth prevailed before the suppression court, we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted [sic] when read in the context of the record as a whole. Where the suppression court's factual findings are supported by the record, [the appellate court is] bound by [those] findings and may reverse only if the court's legal conclusions are erroneous.

*Commonwealth v. Jones*, 121 A.3d 524, 526-27 (Pa. Super. 2015) (citation omitted). "Further, [i]t is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." *Commonwealth v. Houck*, 102 A.3d 443, 455 (Pa. Super. 2014) (citations omitted).

We find that the suppression court's factual findings are supported by the record. Therefore, we proceed to examine the trial court's application of the relevant law to the facts at hand.

Cordenner contends that Officer English did not have reasonable suspicion of criminal activity to justify the initial encounter because Officer English's car blocked the parking lot's exit, Officer English approached Cordenner in full police uniform, and Cordenner did not feel free to leave at any point during the encounter. **See** Appellant's Brief, at 4, 8, 10. The Commonwealth contends that Officer English did not *need* reasonable suspicion to approach Cordenner, because Officer English's actions constituted a mere encounter. **See** Appellee's Brief, at 7-8. We agree with the Commonwealth.

The Fourth Amendment of the United States Constitution guarantees, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated…." U.S. Const. amend. IV. Similarily, the Pennsylvania Constitution assures citizens of our Commonwealth that "[t]he people shall be secure in their persons, houses, papers and possessions from unreasonable searches and seizures…." Pa. Const. art. I, § 8. Further, "[t]he reasonableness of a governmental intrusion varies with the degree of privacy legitimately expected and the nature of the governmental intrusion." **Commonwealth v. Fleet**, 114 A.3d 840, 844 (Pa. Super. 2015) (citation omitted). Interactions between law enforcement and citizens fall into one of three following categories.

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of

suspicion, but carries no official compulsion to stop or respond. The second, an "investigative detention" must be supported by reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Id*., at 845 (citation omitted).

When assessing whether an interaction escalates from a mere encounter to an investigative detention, we employ the following standard.

To guide the crucial inquiry as to whether or not a seizure has been effected, the United States Supreme Court has devised an objective test entailing a determination of whether, in view of all surrounding circumstances, a reasonable person would have believed that he was free to leave. In evaluating the circumstances, the focus is directed toward whether, by means of physical force or show of authority, the citizen-subject's movement in some way has been restrained. In making this determination, courts must apply the totality-of-the-circumstances approach, with no single factor dictating the ultimate conclusion as to whether a seizure has occurred.

*Commonwealth v. McAdoo*, 46 A.3d 781, 784 (Pa. Super. 2012) (citation omitted).

At the suppression hearing, Officer English testified that he initially approached Cordenner because he observed Cordenner park his car in an abandoned parking lot and believed Cordenner might be suffering from a medical condition or need directions. *See* N.T., Suppression Hearing, 10/27/14 at 10-11. Officer English parked his unmarked police vehicle fifteen feet from Cordenner's car in a manner that did not block the entrance to the parking lot. *See id*. at 10. As Officer English approached Cordenner,

he did not activate his emergency lights, pull his gun, yell, or act in an aggressive manner. *See id*. at 13. When Officer English arrived at Cordenner's car, he asked Cordenner if he needed assistance, and informed him where the closest fast food restaurant was located. *See id*. at 12. Additionally, Officer English indicated that he would not have followed Cordenner if he left the parking lot upon Officer English's approach. *See id*.

Our analysis of the totality of the circumstances clearly shows that a reasonable person would have felt free to leave upon Officer English's approach, and therefore Officer English's actions constituted a mere encounter. *See Commonwealth v. Conte*, 931 A.2d 690 (Pa. Super. 2007) (finding a mere encounter where a police officer stops to help a stopped vehicle). As the interaction constituted a mere encounter, no reasonable suspicion to approach was needed. *See Commonwealth v. Fuller*, 940 A.2d 476, 479 (Pa. Super. 2007) ("A mere encounter between police and a citizen need not be supported by any level of suspicion, and carr[ies] no official compulsion on the part of the citizen to stop or to respond." (internal quotation marks and citation omitted; brackets in original)). Accordingly, we reject Cordenner's claim that the trial court erred in failing to suppress the evidence recovered as a result of this encounter.[1]

_____

[1] We note that Cordenner only challenges the initial encounter between himself and Officer English. Therefore, it was unnecessary to categorize the encounter as it progressed.

In his final issue on appeal, Cordenner argues that the Commonwealth violated his right to a speedy trial. Specifically, Cordenner argues that the mechanical run date for Rule 600 was exceeded, and that the Commonwealth did not establish that it had exercised due diligence in bringing the case to trial. **See** Appellant's Brief, at 4, 11.

Rule 600 provides, in relevant part, that a defendant released on bail is entitled to have trial commence no later than 365 days after the complaint was filed. **See** Pa.R.Crim.P. 600(A)(2)(a). Our scope and standard of review relating to the application of Rule 600 is whether the trial court abused its discretion. **See Commonwealth v. Robbins**, 900 A.2d 413, 415 (Pa. Super. 2006) (citation omitted). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will . . . discretion is abused." **Commonwealth v. Selenski**, 994 A.2d 1083, 1087 (Pa. 2010) (citations omitted). "Our scope of review is limited to the evidence on the record of the Rule 600 evidentiary hearing and the findings of the trial court. We must view the facts in the light most favorable to the prevailing party." **Robbins**, 900 A.2d at 415.

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule [600]. Rule [600] serves two equally important functions; (1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given

to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule [600] was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

*Commonwealth v. Hunt*, 858 A.2d 1234, 1239 (Pa. Super. 2004) (*en banc*) (citation omitted; brackets in original).

"[T]o obtain relief, a defendant must have a valid Rule 600 claim at the time he files his motion to dismiss the charges." *Commonwealth v. Hyland*, 875 A.2d 1175, 1189 (Pa. Super. 2005). The first step in conducting a Rule 600 analysis is to calculate the "mechanical run date." *Commonwealth v. Lynn*, 815 A.2d 1053, 1056 (Pa. Super. 2003). "The mechanical run date is the date by which the trial must commence under Rule 600. It is calculated by adding 365 days . . . to the date on which the criminal complaint is filed." *Id*. (citation omitted). "If the Commonwealth attempts to bring a defendant to trial beyond the 365 day-period prescribed by Rule 600, and the defendant filed a Rule 600 motion to dismiss, the court must assess whether there is excludable time and/or excusable delay." *Hunt*, 858 A.2d at 1241. The court must exclude from the time for commencement of trial any periods during which the defendant was unavailable, including any continuances requested by the defendant. *See* Pa.R.Crim.P. 600(C); Rule 600, *Comment*. The amount of excludable time is added to the mechanical run date to arrive at an adjusted run date. *See Commonwealth v. Ramos*, 936 A.2d 1097, 1103 (Pa. 2007).

The filing of a pre-trial motion does not automatically make a defendant unavailable within the meaning of Rule 600. ***See Commonwealth v. Wallace***, 804 A.2d 675, 679 (Pa. Super. 2002).[2]

> Rather, a defendant is unavailable only if the filing of the pretrial motion caused a delay in the commencement of trial. Moreover, to establish that the delay is excludable, the Commonwealth must demonstrate, by a preponderance of the evidence, that it exercised due diligence in opposing or responding to the pretrial motion; a delay caused by the Commonwealth's lack of due diligence will not constitute excludable time.

***Id***. (internal citations omitted). The Commonwealth can show that it exercised due diligence in responding to a motion, if it "attended and was prepared for each of the proceedings that was conducted in consideration of these motions." ***Commonwealth v. Hill***, 736 A.2d 578, 581 (Pa. 1999).[3]

After the inclusion of excludable time, even where a violation of Rule 600 has occurred, we must apply a due diligence analysis to assess whether the delay was excusable. ***See Ramos***, 936 A.2d at 1103. "'Excusable delay' is not expressly defined in Rule 600, but the legal construct takes into account delays which occur as a result of circumstances beyond the Commonwealth's control and despite its due diligence." ***Hunt***, 858 A.2d at 1241 (citation omitted). Due diligence must be determined on a case-by-

---

[2] ***Wallace*** was decided when Rule 600 was known as Rule 1100. Nevertheless, the analysis remains the same.

[3] Like ***Wallace***, ***Hill*** was decided when Rule 600 was known as Rule 1100. However, this distinction does not change our analysis.

case basis. *See id*. "Due diligence does not require perfect vigilance and punctilious case, but rather a showing by the Commonwealth that a reasonable effort has been put forth." *Id*., at 1241-42 (citation omitted). A period of delay that is excusable results in an extension to the adjusted run date. *See Ramos*, 936 A.2d at 1103. Extensions added to the adjusted run date produce the final Rule 600 run date. *See id*. The trial court must dismiss the charges if the Commonwealth does not bring the defendant to trial on or before the final run date. *See id*.

Here, the Commonwealth filed its complaint on November 21, 2013. Thus, the mechanical run date was November 21, 2014. Cordenner filed a pre-trial motion to suppress evidence on July 15, 2014. After he filed the motion, the trial court scheduled a suppression hearing for October 2, 2014. The suppression hearing was rescheduled for October 27, 2014. On the date of the suppression hearing, the Commonwealth appeared and presented witnesses in opposition to Cordenner's motion. The trial court denied Cordenner's motion on November 20, 2014.

The filing of this motion caused a delay in the proceedings from the previously scheduled trial date of July 17, 2014, until the trial court's disposition of Cordenner's motion to suppress on November 20, 2014. As discussed, a defendant is "unavailable" within the meaning of Rule 600 when the filing of a pre-trial motion delays a trial date and the Commonwealth can show it exercised due diligence in responding to the defendant's motion. *See*

***Wallace***, 804 A.2d at 679. The Commonwealth exercised due diligence by preparing for, and attending all hearings related to Cordenner's motion. ***See Hill***, 736 A.2d at 581. Thus, the 126-day period between July 17, 2014 and November 20, 2014 is attributable to Cordenner and excludable under Rule 600(C). We see no abuse of discretion in the court's decision. ***See Commonwealth v. McNear***, 852 A.2d 401, 407 (Pa. Super. 2004). An addition of 126 days of excludable time results in an adjusted run date of March 27, 2015. As Cordenner filed his Rule 600 motion on March 18, 2015, the trial court properly denied his Rule 600 motion.[4]

 Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/23/2016

---

[4] Because it is clear that Cordenner filed his Rule 600 motion before the extended run date, we do not need to analyze the entire record to determine whether the final run date is March 27, 2015 or some later date. ***See Hyland***, 875 A.2d at 1189.