J-S39023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MANUEL ANDRES SANTANA DEL | : | |
| ROSARIO | : | |
| | : | No. 1737 MDA 2022 |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered December 14, 2022
In the Court of Common Pleas of Schuylkill County Criminal Division at
No(s):  CP-54-CR-0000320-2022

BEFORE:  DUBOW, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McLAUGHLIN, J.:        **FILED: DECEMBER 15, 2023**

Manuel Andres Santana Del Rosario appeals from the judgment of
sentence imposed on his convictions for two counts of aggravated assault and
one count each of possessing instruments of crime ("PIC"), simple assault,
and recklessly endangering another person ("REAP").[1] He challenges the
sufficiency of the evidence as well as both the discretionary aspects and
legality of his sentence. We affirm.

The trial court aptly summarized the facts relevant to this appeal as
follows:

> The evidence at [the jury] trial included testimony from the
> victim Edwin Candelario. According to Mr. Candelario, he
> operated a stand at Renninger's Market, a flea market-type
> of establishment, where he sold household goods and
> sports-related items. [Rosario] was a customer at the stand,

---

[1] **See** 18 Pa.C.S.A. §§ 2702(a)(1), 2702(a)(4), 907(a), 2701(a)(1), and 2705,
respectively.

and, as of February 4, 2022, [Rosario] owed Candelario about $80.00 for items that he had purchased. Early that day, [Rosario] was in contact via cellphone with Candelario. [Rosario] insisted on paying Candelario $50.00 toward his debt, and that Candelario travel to [Rosario's] home to receive the money. Candelario agreed.

Candelario and his girlfriend drove to [Rosario's] home in Mahanoy City, Schuylkill County that morning, and upon arrival at the home they were met outside by [Rosario] who invited them into the home. Upon their entry into the home, [Rosario] placed $50.00 on a table for Candelario to retrieve. Candelario picked up the money and he and his girlfriend left the home. However, [Rosario] followed Candelario and his girlfriend to their vehicle where he made a comment to Candelario's girlfriend which annoyed Candelario. The latter told [Rosario] that if he needed to say something it should be said to Candelario. [Rosario] then asked Candelario to come back into his home so they could finish talking.

Candelario agreed, and he and his girlfriend re-entered [Rosario's] home, whereupon [Rosario] pulled out a gun, stuck it in Candelario's face, grabbed Candelario by the neck, and told him to sit down. Candelario sat on a couch, with his girlfriend sitting next to him. [Rosario] sat in a chair directly in front of Candelario with the gun in his hand. Candelario asked [Rosario] what the problem was, and why [Rosario] had a gun pointed at him. Candelario told [Rosario] that they could just forget "about this," and that "this never happened."

[Rosario] responded in Spanish, "Rat," and told Candelario to get on his knees. Candelario got on his knees on the floor. [Rosario] then told Candelario to put his hands on his head, which he did. Candelario was then hit on the head by [Rosario], and he fell toward his girlfriend's lap. As Candelario was trying to return to his original position, [Rosario] threw a punch at Candelario's face with his fist. Candelario blocked the punch, got up and hurried to the front door of the premises in an effort to exit the house. Candelario found that the front door was locked. As Candelario was trying to unlock the door, he was shot once in the arm and once in [the] area of the rib cage by [Rosario].

- 2 -

Candelario was able to escape from the house, but [Rosario] followed him to the street where, Candelario testified, [Rosario] shot at him again. Candelario ran to the Mahanoy City police station, which was located close to [Rosario's] home, and banged on the door. Chief of Police Thomas Rentscher answered the door to the police station, saw Candelario bleeding profusely and got him inside the station where Candelario received emergency treatment, including the application of a tourniquet by the Code Enforcement Officer. Emergency medical services were summoned, and Basic and Advance Life Support personnel treated Candelario at the police station. He was subsequently life-flighted to Geisinger Medical Center where he remained as a patient for over a week. According to Candelario, he had not made any threats toward [Rosario], nor did he possess a weapon while at [Rosario's] home the day of the shooting.

Dr. Robert Garvin, a vascular surgeon at Geisinger Medical center testified that Candelario was treated surgically for a right upper extremity arterial injury, namely a radial artery tear in the forearm and hemorrhage, to control the bleeding and attempt to repair the injury to the artery. According to Dr. Garvin, the injury to the artery was serious, and without successful treatment posed a risk of death, or loss of limb or function to Candelario. Doctor Garvin determined during surgery that the artery was too damaged for the broken ends to be "brought together," so the decision was made to "tie them off." Candelario underwent several medical procedures thereafter to close the wound, and was released from the doctor's care after his last visit on March 2, 2022.

Investigating police officers who examined the scene of the shooting identified bullet strikes to the inside of the door to [Rosario's] home, and interviewed [Rosario] and his wife who had been present at the time of the shooting. [Rosario] admitted at trial that he had shot Candelario, and that he had ordered Candelario to get on his knees at gunpoint. However, [Rosario] claimed that he would not have shot Candelario if [Candelario] had allowed [Rosario] to search him for weapons, [if Candelario] had not hit [Rosario] as he was getting up from the floor when [Rosario] had the gun pointed at Candelario, or if Candelario had not reached toward his pocket as he was trying to get out of the front

J-S39023-23

> door.[2] No evidence produced at trial indicated that Candelario possessed any weapon the day of the shooting.

Trial Court Rule 1925(a) Opinion, filed 2/13/23, at 2-5. The jury found Rosario guilty of the above-referenced crimes. The trial court sentenced him to seven to 15 years' incarceration for aggravated assault followed by one year of reporting probation, a consecutive sentence of one year of probation for PIC, and a concurrent term of one year of probation for REAP.[3] This timely appeal followed.

Rosario raises the following issues:

1. Did the Commonwealth fail to establish sufficient evidence to support a conviction for the charge of aggravated assault?

2. Did the [c]ourt err by imposing an aggravated range sentence without considering the mitigating circumstances raised in the pre-sentence report and by [Rosario]?

3. Did the charges [sic] of recklessly endangering arise from the same event as the aggravated assault for sentencing purposes and should a separate sentence not have been imposed?

Rosario's Br. at 5 (suggested answers omitted).

Rosario's first issue challenges the sufficiency of the evidence for aggravated assault. However, in his appellate brief, he concedes that "[t]he Commonwealth presented sufficient evidence to support the conviction of

---

[2] Rosario testified that the victim hit Rosario in his face while the victim was kneeling on the floor. **See** N.T., Trial, at 286, 287.

[3] The court imposed no further penalty for aggravated assault with a deadly weapon and the simple assault conviction merged for sentencing purposes.

- 4 -

aggravated assault and *the argument is without merit*." ***Id.*** at 20 (emphasis added). As he has in effect abandoned this claim, it cannot afford him relief.

In his next issue, Rosario challenges the discretionary aspects of his sentence, claiming that the court imposed an aggravated sentence without considering the mitigating circumstances.

We review a challenge to the discretionary aspects of sentence for an abuse of discretion. ***See Commonwealth v. Zeigler***, 112 A.3d 656, 661 (Pa.Super. 2015). Such challenges are not automatically appealable. Rather, we must first determine whether: 1) the appellant has filed a timely notice of appeal; 2) the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; 3) the appellant's brief has a fatal defect; and 4) there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. ***See Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa.Super. 2010). "Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or raised in a motion to modify the sentence imposed at that hearing." ***Commonwealth v. Hyland***, 875 A.2d 1175, 1183 (Pa.Super. 2005).

Rosario has met the first requirement of the above test. However, he did not preserve his issue at sentencing or in a motion to reconsider or modify his sentence. The claim is waived. ***See id.***

In his final issue, Rosario argues his convictions for REAP and aggravated assault should have merged for sentencing purposes. He claims

REAP is a lesser included offense of aggravated assault and therefore he "can only be sentenced on the aggravated assault." Rosario's Br. at 23-24.

"A claim that crimes should have merged for sentencing purposes raises a challenge to the legality of the sentence." ***Commonwealth v. Cianci***, 130 A.3d 780, 782 (Pa.Super. 2015) (citation omitted). "[O]ur standard of review is *de novo* and our scope of review is plenary." ***Id.*** (citation omitted).

"No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense." 42 Pa.C.S.A. § 9765.

Rosario's claim lacks merit. The crime of aggravated assault requires causing or attempting to cause serious bodily injury, while REAP requires a showing of actual danger of death or serious bodily injury. ***See*** 18 Pa.C.S.A. § 2702(a)(1); ***cf.*** 18 Pa.C.S.A. § 2705 (defining REAP as "recklessly engag[ing] in conduct which places or may place another person in danger of death or serious bodily injury"). Because all the elements of REAP are not included in aggravated assault, REAP is not a lesser included offense of aggravated assault. The crimes should not have merged for sentencing purposes. ***See Commonwealth v. Edwards***, 256 A.3d 1130, 1138 (Pa. 2021) ("Since all of the statutory elements of REAP are not contained in aggravated assault, they do not merge for sentencing purposes"). We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 12/15/2023