J-S64005-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MARQUISE P. WALIYYUDDIN | |
| Appellant | No. 3650 EDA 2015 |

Appeal from the Judgment of Sentence Entered July 31, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0008582-2011

BEFORE: STABILE, J., SOLANO, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STABILE, J.: **FILED NOVEMBER 07, 2016**

This case returns to us following our remand to the Court of Common Pleas of Philadelphia County ("trial court") to resentence Appellant for his involuntary manslaughter conviction. Upon review, we affirm.

The facts underlying this case are undisputed. As recounted by a prior panel of this Court:

> On the evening of Saturday, May 14, 2011, [Appellant] was at the apartment of his friend, Katrina Rodriguez [("Rodriguez")], who was the mother of [Aiden Santiago ("Santiago")[1] ], a healthy three-month-old baby boy. [Appellant] was the godfather of [Santiago], and had babysat for him on several occasions without incident. Also present was [Appellant]'s boyfriend, Luis Torres [("Torres")]. At around 11:00 p.m., [Appellant] told Rodriguez that he wanted to keep [Santiago] for

---

[*] Former Justice specially assigned to the Superior Court.

[1] Although Santiago was a minor at the time of the incident, it is not necessary for us to protect his identity by using his initials as he is deceased.

an overnight stay. Rodriguez agreed that [Appellant] could take [Santiago] to the apartment that [Appellant] shared with Torres until the next day. [Appellant] and Torres left with [Santiago], who was alert and without any observable problems at the time.

Sometime during the afternoon of the next day, Torres left [Appellant] and [Santiago] to visit Torres' mother for dinner. During dinner, Torres received a frantic call from [Appellant], who told Torres that [Santiago] was not breathing. Torres, his brother, and his aunt left the house and rushed to [Appellant]'s apartment. When they arrived and saw [Santiago], Torres'[] aunt called 911.

Paramedics arrived at the apartment at approximately 7:30 p.m. [Santiago] was taken to St. Christopher's Hospital, where, despite emergency cranial surgery, he died at 11:55 p.m. The autopsy of [Santiago] revealed subarachnoid and subdural hematomas, and optic-nerve hemorrhages, all consistent with vigorous shaking of the baby's head. The medical examiner requested a consult from a pediatric neuropathologist, who concluded that [Santiago] died from abusive head trauma.

[Appellant] gave a statement to police on May 16, 2011. In that statement, he admitted to getting frustrated when [Santiago] awoke during the night crying, and that he "was rocking him harder, and was shaking him, just trying to get him to stop crying." He further admitted putting [Santiago] into his car seat and "rocking the car seat back and forth pretty hard" causing [Santiago] to bounce back and forth in the seat. [Appellant] stated that he "could hear [Santiago's] head bouncing back on the back of the car seat." According to [Appellant], this eventually caused [Santiago] to stop crying.

***Commonwealth v. Waliyyuddin***, No. 2883 EDA 2013, unpublished

memorandum at 1-2 (Pa. Super. filed November 25, 2014) (citing Trial

Court Opinion, 1/6/14, at 2-3)).

The procedural history of this case is as follows.[2] On May 17, 2011,

Appellant was charged with third degree murder[3] (18 Pa.C.S.A. § 2502(c))

---

[2] Unless otherwise specified, these facts come from this Court's November 25, 2014 decision.

[3] The docket in this matter reflects that Appellant was not charged with involuntary manslaughter at the outset.

and endangering the welfare of a child ("EWOC") (18 Pa.C.S.A. § 4304(a)(1)). On August 2, 2011, a criminal information charging Appellant with third-degree murder, EWOC and involuntary manslaughter (18 Pa.C.S.A. § 2504(a)) was filed. After a three-day bench trial, Appellant was found guilty of involuntary manslaughter and EWOC. On May 24, 2013, the trial court sentenced Appellant to 4 to 8 years' imprisonment for involuntary manslaughter and 1 to 2 years' imprisonment for EWOC. Appellant's aggregate sentence therefore was 5 to 10 years' imprisonment. Appellant filed a post-sentence motion, which the trial court denied. Appellant timely appealed to this Court, raising two issues for our review. First, Appellant argued that the trial court imposed an illegal sentence because involuntary manslaughter and EWOC convictions merged for sentencing purposes. Second, Appellant challenged the discretionary aspects of his sentence. On appeal, a panel of this Court agreed with Appellant's merger argument, concluding that involuntary manslaughter and EWOC should have merged at sentencing. *Waliyyuddin*, No. 2883 EDA 2013, at 9-10. As a result, we vacated Appellant's sentence and remanded the case to the trial court for resentencing.[4]

Upon remand, on July 31, 2015, the trial court resentenced Appellant to 5 to 10 years' imprisonment for involuntary manslaughter. On August 3,

---

[4] Because we vacated the judgment of sentence, we declined to address Appellant's challenge to the discretionary aspects of his sentence.

- 3 -

2015, Appellant filed a post-sentence motion, which the trial court denied on November 17, 2015. Appellant once again filed a timely appeal to this Court. Following Appellant's filing of a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, the trial court issued a Pa.R.A.P. 1925(a) opinion.

On appeal,[5] Appellant raises three issues for our review:

1. Did not the trial court err in sentencing Appellant beyond the aggravated range of the Sentencing Guidelines based on an improper factor, that is, the age of the victim, which the Guidelines already contemplate and provide for in the grading of the crime and in the offense gravity score, thus failing to provide adequate reasons for deviating from the Sentencing Guidelines?

2. Did not the trial court err in improperly relying on Appellant's arrest record as evidence of prior criminality?

3. Did not the trial court err in imposing a sentence both manifestly excessive and unreasonable under all of the circumstances of this case?

Appellant's Brief at 4.[6]

_____

[5] When reviewing a challenge to the trial court's discretion, our standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. An abuse of discretion is more than just an error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will.

*Commonwealth v. Bowen*, 55 A.3d 1254, 1263 (Pa. Super. 2012) (quoting *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002)), *appeal denied*, 64 A.3d 630 (Pa. 2013).

[6] Appellant's first and third issues are related to the extent they implicate the excessiveness of his sentence.

Because Appellant's issues implicate only the discretionary aspects of his sentence, we note it is well-settled that "[t]he right to appeal a discretionary aspect of sentence is not absolute." *Commonwealth v. Dunphy*, 20 A.3d 1215, 1220 (Pa. Super. 2011). Rather, where an appellant challenges the discretionary aspects of a sentence, an appellant's appeal should be considered as a petition for allowance of appeal. *Commonwealth v. W.H.M.*, 932 A.2d 155, 162 (Pa. Super. 2007). As we stated in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
>> [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Id.* at 170 (citing *Commonwealth v. Evans*, 901 A.2d 528 (Pa. Super. 2006)). Whether a particular issue constitutes a substantial question about the appropriateness of sentence is a question to be evaluated on a case-by-case basis. *See Commonwealth v. Kenner*, 784 A.2d 808, 811 (Pa. Super. 2001), *appeal denied*, 796 A.2d 979 (Pa. 2002).

Here, Appellant has satisfied the first three requirements of the four-part *Moury* test. Appellant filed a timely appeal to this Court, preserved the issue on appeal through his post-sentence motions, and included a Pa.R.A.P.

2119(f) statement in his brief.[7] We, therefore, must determine only if Appellant's sentencing issues raise a substantial question.

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). We have found that a substantial question exists "when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Phillips*, 946 A.2d 103, 112 (Pa. Super. 2008) (citation omitted), *appeal denied*, 964 A.2d 895 (Pa. 2009). "[W]e cannot look beyond the statement of questions presented and the prefatory [Rule] 2119(f) statement to determine whether a substantial question exists." *Commonwealth v. Christine*, 78 A.3d 1, 10 (Pa. Super. 2013), *affirmed*, 125 A.3d 394 (Pa. 2015).

This Court does not accept bald assertions of sentencing errors. *See Commonwealth v. Malovich*, 903 A.2d 1247, 1252 (Pa. Super. 2006). When we examine an appellant's Rule 2119(f) statement to determine whether a substantial question exists, "[o]ur inquiry must focus on the reasons for which the appeal is sought, in contrast to the facts underlying

---

[7] Rule 2119(f) provides that "[a]n appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth in his brief a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence." Pa.R.A.P. 2119(f).

the appeal, which are necessary only to decide the appeal on the merits."
*Commonwealth v. Ahmad*, 961 A.2d 884, 886-87 (Pa. Super. 2008)
(quoting *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005)).
A Rule 2119(f) statement is inadequate when it "contains incantations of
statutory provisions and pronouncements of conclusions of law[.]"
*Commonwealth v. Bullock*, 868 A.2d 516, 528 (Pa. Super. 2005) (citation
omitted). We consistently have held that bald assertions of excessiveness
are insufficient to present a substantial question. *See Commonwealth v.
Fisher*, 47 A.3d 155, 159 (Pa. Super. 2012) ("[The a]ppellant simply
asserts: 'A substantial question is presented about the sentence where the
Court imposed a manifestly unreasonable sentence in excess of the
guidelines without sufficient justification." . . . This amounts to a bald
assertion that [the a]ppellant's sentence was excessive, devoid of supporting
legal authority."); *see also Moury*, 992 A.2d at 170 ("As to what
constitutes a substantial question, this Court does not accept bald assertions
of sentencing errors. An appellant must articulate the reasons the
sentencing court's actions violated the sentencing code.").

Here, Appellant asserts in his Rule 2119(f) statement:

> The [trial] court . . . assigned special, and overwhelming significance to the age of the child victim in articulating the reason for its departure from the aggravated range of the Sentencing Guidelines in fashioning the sentence imposed at the resentencing, even though the Guidelines already contemplate the under twelve population as particularly vulnerable: 18 Pa.C.S.A. § 2504(b) raises the grading of involuntary manslaughter from a first degree misdemeanor to a second degree felony "where the victim is under twelve years of age and is in the case [sic], custody or control of the person who caused the death." Similarly, the offense gravity score has been raised

from six to eight where the victim is a child in the care of the perpetrator. Thus, the [trial] court failed to support its imposition of a manifestly excessive and unreasonable sentence with justification based on the circumstances of this matter.

Further, the [trial] court relied entirely on Appellant's arrest record as predictors of the instant matter, and of future conduct, despite any hint of misbehavior in Appellant's prison record.

Accordingly, there are substantial questions as to the sentencing court's actions contrary to the fundamental norms underlying the sentencing process, resulting in an excessive and unreasonable sentence.

Appellant's Brief at 14-15. Based on the foregoing Rule 2119(f) statement, we conclude that Appellant has raised a substantial question with respect to his first and second issues on appeal. *See Commonwealth v. Goggins*, 748 A.2d 721, 732 (Pa. Super. 2000) ("When fashioning a sentence, a sentencing court may not 'double count' factors already taken into account in the sentencing guidelines."), *appeal denied*, 759 A.2d 920 (Pa. 2000); *Commonwealth v. Tirado*, 870 A.2d 362, 365 (Pa. Super. 2005) (finding appellant raised a substantial question for the Court's review when claiming that the trial court "considered factors already included in the guidelines."); *see also Commonwealth v. Oliver*, 693 A.2d 1342, 1347-48 (Pa. Super. 1997) ("The claim that a sentencing court imposed a sentence outside of the guidelines and failed to state adequate reasons for the sentence imposed does present a substantial question that the sentence is inappropriate under the Sentencing Code."). However, his third issue claiming that the sentence is excessive does not raise a substantial question to the extent it is not

subsumed by the first issue.[8]  **See Fisher**, 47 A.3d at 159 ("[A] bald assertion that a sentence is excessive does not itself raise a substantial question justifying this Court's review of the merits of the underlying claim."); **see also Commonwealth v. Bromley**, 862 A.2d 598, 604 (Pa. Super. 2004) (explaining defendant did not raise a substantial question by merely asserting sentence was excessive when he failed to reference any section of Sentencing Code potentially violated by the sentence), **appeal denied**, 881 A.2d 818 (Pa. 2005).  Accordingly, we address the merits of Appellant's first two issues.

After careful review of the record, and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of the issues considered on appeal.  **See** Trial Court Opinion, 12/22/15, at 3-7.  Accordingly, we affirm the trial court's July 31, 2015 judgment of sentence.  We further direct that a copy of the trial court's December 22, 2015 Rule 1925(a) Opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

---

[8] Even if we were to grant review of Appellant's third issue, he still would not be entitled to relief as explained in the trial court's Rule 1925(a) opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/7/2016

**FILED**

DEC 2 2 2015

**Post Trial Unit**

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0008582-2011 |
| | : | |
| v. | : | |
| | : | |
| MARQUISE WALIYYUDDIN | : | |



OPINION

7386327231

BRONSON, J.                                                           December 22, 2015

On March 22, 2013, following a non-jury trial before this Court, defendant Marquis

Waliyyuddin was convicted of one count of involuntary manslaughter (18 Pa.C.S. § 2504(a)) and

one count of endangering the welfare of a child ("EWOC") (18 Pa.C.S. § 4304(a)(1)).[1] The

Court deferred sentencing so that a pre-sentence report and mental health evaluation could be

prepared. On May 24, 2013, the Court sentenced defendant to four to eight years in state prison

for the involuntary manslaughter charge and one to two years for the EWOC charge, to run

consecutively, for an aggregate sentence of five to ten years ("original sentence"). Defendant

filed a post-sentence motion, which the Court denied on September 16, 2013. Defendant

appealed the sentence imposed by the Court and, on November 25, 2014, the Superior Court held

that EWOC and involuntary manslaughter merged for purposes of sentencing, vacated

defendant's sentence, and remanded for a new sentencing hearing. On April 14, 2015, the

Pennsylvania Supreme Court denied the Commonwealth's petition for *allocator*. Pursuant to the

Superior Court remand, the Court held a new sentencing hearing on July 31, 2015, and sentenced

defendant to five to ten years incarceration on the involuntary manslaughter charge ("new

sentence"). Defendant filed post-sentence motions, which the Court denied on November 17,

---

[1] The Court acquitted defendant of one count of third-degree murder (18 Pa.C.S. § 2502(c)).



2015. Defendant has now appealed his sentence on the grounds that: 1) the Court improperly sentenced defendant beyond the aggravated range based on an improper factor; 2) the Court's sentence was manifestly excessive and unreasonable; and 3) the Court erred at sentencing by improperly relying on defendant's arrest record. Statement of Errors Complained of on Appeal at ¶ 4 ("Statement of Errors"). For the reasons set forth below, defendant's claims are without merit.

## I. FACTUAL BACKGROUND

The factual basis for this matter was summarized in this Court's opinion in defendant's original direct appeal as follows:

> At trial, the Commonwealth presented the testimony of Yywanka Walker, Katrina Rodriguez, Luis Torres, Dr. Shaheen Timmapuri, Dr. Aaron Rosen, Dr. Lucy Rorke-Adams, Philadelphia Police Officer Christopher Brennan, and Philadelphia Police Detective John Harkins. Defendant presented the testimony of Dr. Jan Edward Leestma. Viewed in the light most favorable to the Commonwealth as the verdict winner, their testimony established the following.
>
> On the evening of Saturday, May 14, 2011, defendant was at the apartment of his friend, Katrina Rodriguez, who was the mother of A.S., a healthy three-month-old baby boy. N.T. 3/20/2013 at 52-56, 59. Defendant was the godfather of A.S., and had babysat for him on several occasions without incident. N.T. 3/20/2013 at 57-58. Also present was defendant's boyfriend, Luis Torres. N.T. 3/20/2013 at 50-51, 59. At around 11:00 p.m., defendant told Rodriguez that he wanted to keep A.S. for an overnight stay. N.T. 3/20/2013 at 59. Rodriguez agreed that defendant could take A.S. to the apartment that defendant shared with Torres until the next day. N.T. 3/20/2013 at 66. Defendant and Torres left with A.S., who was alert and without any observable problems at the time. N.T. 3/20/2013 at 66-69, 143-144, 148.
>
> Sometime during the afternoon of the next day, Torres left defendant and A.S. to visit Torres' mother for dinner. N.T. 3/20/2013 at 165-167. During dinner, Torres received a frantic call from defendant, who told Torres that A.S. was not breathing. N.T. 3/20/2013 at 167. Torres, his brother, and his aunt left the house and rushed to defendant's apartment. N.T. 3/20/2013 at 169-170. When they arrived and saw A.S., Torres's aunt called 911. N.T. 3/20/2013 at 171-172.
>
> Paramedics arrived at the apartment at approximately 7:30 p.m. N.T. 3/20/2013 at 39-40. A.S. was taken to St. Christopher's Hospital, where, despite emergency cranial surgery, he died at 11:55 p.m. N.T. 3/20/2013 at 44; 3/21/2013 at 11-12, 28. The

2

autopsy of A.S. revealed subarachnoid and subdural hematomas, and optic-nerve hemorrhages, all consistent with vigorous shaking of the baby's head. N.T. 3/21/2013 at 13, 35, 41-42. The medical examiner requested a consult from a pediatric neuropathologist, who concluded that A.S. died from abusive head trauma. N.T. 3/21/2013 at 118-119.

Defendant gave a statement to police on May 16, 2011. N.T. 3/20/2013 at 225. In that statement, he admitted to getting frustrated when A.S. awoke during the night crying, and that he "was rocking him harder, and was shaking him, just trying to get him to stop crying." N.T. 3/20/2013 at 233. He further admitted putting A.S. into his car seat and "rocking the car seat back and forth pretty hard" causing A.S. to bounce back and forth in the seat. Defendant stated that he "could hear [A.S.'s] head bouncing back on the back of the car seat." N.T. 3/20/2013 at 233. According to defendant, this eventually caused A.S. to stop crying. N.T. 3/20/2013 at 233. Defendant was subsequently arrested. N.T. 3/20/2013 at 239-240.

Trial Court Opinion, filed 1/6/14 at 2-3.

## II. DISCUSSION

### A. Improper Sentencing Factor

Defendant first claims that "[t]he Court erred in sentencing Appellant beyond the aggravated range of the Sentencing Guidelines based on an improper factor, that is, the age of the victim, a factor already contemplated and provided for by the Guidelines in the grading of the crime and in the offense gravity score." Statement of Errors at ¶ 4(a). This claim was set forth in defendant's appeal of his original sentence. However, as the Superior Court remanded this matter for new sentencing, the Superior Court did not address defendant's challenge in its November 25, 2014 opinion. Superior Court Opinion, filed 11/25/14 at p. 10. This claim is without merit.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 552 A.2d 1064, 1072 (Pa. Super. 1988), *app. denied*, 571 A.2d 379 (Pa. 1989); *see Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). Where the sentence falls

3

outside the Sentencing Guidelines, the sentence should be affirmed on appeal unless it is "unreasonable." 42 Pa.C.S. § 9781(c)(3); *see Commonwealth v. P.L.S.*, 894 A.2d 120, 130 (Pa. Super. 2006). "The sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offenses as it relates to the impact on the life of the victim and the community." *Commonwealth v. Cunningham*, 805 A.2d 566, 575 (Pa. Super. 2002), *appeal denied*, 820 A.2d 703 (Pa. 2003). The factual basis and reasons for the departure must be stated on the record. *Id.*

Involuntary manslaughter is ordinarily a first-degree misdemeanor. However, where, as here, the victim is under the age of 12 years old, and is in the care, custody or control of the person who caused the death, the offense is graded as a second degree felony. 18 Pa.C.S. § 2504(b). More importantly for defendant's argument, while the offense gravity score for involuntary manslaughter graded as a first-degree misdemeanor is 6, the offense gravity score increases to 8 for the second-degree felony. *See* 204 Pa.Code § 303.15. Defendant is correct that it would be unlawful to premise a departure above the guidelines on a factor that the guidelines have explicitly taken into account. Therefore, defendant argues that since the guidelines already augment the offense gravity score when the victim is young, the Court erred in considering the age of the victim as a reason for an upward departure.

Here, however, at both the original sentencing hearing and the new sentencing hearing, the Court premised its departure above the guidelines not merely on the fact that the victim was under the age of twelve, which was contemplated by the guidelines, but rather on the fact that as a three-month old baby, the victim was in a far more vulnerable subclass of children under the age of 12. The Court stated at both hearings that, "when you have an infant as a victim, three-

4

month-old-victim and when the guidelines come from a population of everybody under 12 years old, this is a particularly vulnerable subclass of that category not taken into account by the sentencing guidelines." N.T. 5/24/2013 at 36; 7/31/15 at 18.

Moreover, defendant's claim that it is improper to base an upward departure on the precise age of the victim when the guidelines explicitly account for youth has been squarely rejected by the Supreme Court of Pennsylvania. *See Commonwealth v. Walls*, 926 A.2d 957, 966-67 (Pa. 2007). In *Walls*, the defendant was convicted of the rape of a victim less than 13 years old and involuntary deviate sexual intercourse of a child less than 13 years old. 926 A.2d at 966. The sentencing court departed above the Sentencing Guidelines on both charges, giving as one of the reasons for the departure that the victim was only seven years old. *Walls*, 926 A.2d at 960. The Supreme Court affirmed the judgment of sentence, holding that the sentencing court could properly use the victim's precise age to justify a departure above the Guidelines. *Walls*, 926 A.2d at 967. As the Court stated, "the fact that the victim was only seven years old at the time of the sexual abuse was not an element of rape or IDSI with a victim less than thirteen years old and could justify an above-guideline sentence which might be more heinous than the rape of an older child." *Walls*, 926 A.2d at 966.

The case at bar is indistinguishable from *Walls*. If it is lawful to consider as a ground for departing from the guidelines that a victim is seven years old, when the guidelines apply to all children under the age of 13, then *a fortiori*, it is entirely proper to consider the particular vulnerability of a three-month-old when the guidelines apply to all children under the age of 12.

5

## B. *Manifestly Excessive Sentence*

Defendant next claims that the Court erred "in imposing a sentence both manifestly excessive and unreasonable under all the circumstances of the case." Statement of Errors at ¶ 4(b). This claim is without merit.

"Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of that discretion." *Commonwealth v. Anderson*, 552 A.2d 1064, 1071 (Pa. Super. 1998); *see Commonwealth v. Walls*, 926 A.2d 957 (Pa. 2007). The sentencing court must consider the need to protect the public, the gravity of the offense in relation to the impact upon the victim, the rehabilitative needs of the defendant, and the Sentencing Guidelines. 42 Pa.C.S. § 9721(b); *see Commonwealth v. Hyland*, 875 A.2d 1175, 1184 (Pa. Super. 2005) (quoting *Commonwealth v. Monahan*, 860 A.2d 180, 184 (Pa. Super. 2004)). "[An] appellate court is to exercise its judgment in reviewing a sentence outside the sentencing guidelines to assess whether the sentencing court imposed a sentence that is unreasonable." *Walls*, 962 A.2d at 963; 42 Pa.C.S. § 9781(c)(3).

Here, in fashioning an appropriate sentence, the Court explicitly considered the evidence presented during defendant's trial, the information contained in the pre-sentence report, the Sentencing Guidelines, the gravity of the offense, the mitigation evidence submitted on behalf of defendant, as well as the rehabilitative needs of defendant. N.T. 7/31/15 at 4-5.[2] Moreover, the record demonstrates that the Court's sentence of five to ten years in prison, albeit in excess of the sentencing guidelines, was well justified. Defendant extinguished the life of a defenseless baby

---

[2] Defendant's prior record score was zero. N.T. 5/24/13 at 4. Using the basic sentencing matrix, and applying the Sixth Edition Revised Sentencing Guidelines, the parties agreed that the charge of involuntary manslaughter was assigned a standard range of 9 to 16 months, plus or minus 9 months for the aggravated and mitigated ranges, respectively. N.T. 5/24/13 at 4-5.

6

entrusted to his care because he became frustrated with the baby's crying. His admitted conduct, of shaking the baby aggressively and vigorously, even while the baby's head was banging on the back of a car seat, until he succeeded in silencing the infant, was an egregious misbehavior that the court properly believed to be outside of the heartland of a typical involuntary manslaughter case. Moreover, as the Court stated at sentencing, defendant's prior record score of zero greatly understated defendant's criminal history. N.T. 5/24/2013 at 36-37; 7/31/15 at 20. Although defendant was never convicted of a crime, he had six arrests, including three domestic violence incidents. N.T. 5/24/2013 at 17-18, 36-37; 7/31/15 at 18-20. Under all of the circumstances, a departure above the sentencing guidelines was appropriate and reasonable. Therefore, the Court's sentence should not be disturbed.

### C. Reliance upon Defendant's Arrest Record

Finally, defendant claims that the Court erred by "improperly relying on [defendant's] arrest record as evidence of prior criminality and a predictor of future misconduct." Statement of Errors at ¶ 4(c). However, "[i]t has been held that a court, in imposing sentence may consider prior arrests…as long as the court realizes that the defendant has not been convicted on those prior charges." *Commonwealth v. Bryant*, 458 A.2d 1010, 1011-12 (Pa. Super. 1983) (*quoting Commonwealth v. Craft*, 450 A.2d 1021, 1024 (Pa. Super. 1981). As stated above, while recognizing at sentencing that defendant was never convicted of a crime, he had six arrests, including three domestic violence incidents, which the Court was permitted to consider. N.T. 5/24/2013 at 17-18, 36-37; 7/31/15 at 18-20. Accordingly, this claim is without merit.

7

## III. CONCLUSION

For all of the foregoing reasons, the Court's judgment of sentence should be affirmed.


BY THE COURT:

_____
GLENN B. BRONSON, J.