J-S36026-20

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JHENEA PRATT | : | |
| | : | |
| Appellant | : | No. 1769 WDA 2019 |

Appeal from the Judgment of Sentence Entered September 25, 2019
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s):  CP-02-CR-0013630-2018

BEFORE:   OLSON, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY KING, J.:                    FILED SEPTEMBER 22, 2020

Appellant, Jhenea Pratt, appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following her jury trial convictions for involuntary manslaughter and endangering the welfare of a child ("EWOC").[1]  We affirm.

The relevant facts and procedural history of this case are as follows. C.N.T. is Appellant's infant daughter.  On April 5, 2018, Appellant's boyfriend, Mr. Williams, had taken care of C.N.T. while Appellant attended college classes.  While Mr. Williams was looking after C.N.T., he gave her juice in a sippy cup.  Appellant assumed care of C.N.T. after she returned home.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2504(a) and 4304(a)(1), respectively.

Appellant gave C.N.T. juice in a sippy cup and laid the baby down for a nap. When Appellant checked in on C.N.T. napping, she realized C.N.T. was not breathing and called 911.

When police arrived, they observed that C.N.T. was not breathing and did not have a pulse. Police also saw C.N.T.'s nose and mouth emitting red liquid. While police performed life-saving measures on C.N.T., they heard Appellant say: "This isn't my fault," "This can't be my fault," "I can't get in trouble for this." Paramedics transported C.N.T. to the hospital, where she died later that night.

While in Appellant's home, police recovered a sippy cup from C.N.T.'s bed. Appellant repeatedly tried to enter C.N.T.'s bedroom while authorities were investigating in the room. Appellant became so angry and insistent that police had to physically restrain Appellant to keep her out of the room. Appellant was also angry that the first-responders broke a coffee table on which they placed C.N.T. to perform CPR.

In a subsequent police interview, Appellant explained that on the night C.N.T. died, the child began her nap on the couch. Appellant said she took C.N.T. to her bed to continue her nap after an acquaintance arrived to visit Appellant, and then she and the visitor smoked marijuana.

Forensic analysis indicated the liquid in C.N.T.'s sippy cup tested positive for Para-Fluorosiobutyryl Fentanyl ("PFIBF"), an opioid and form of Fentanyl, and that C.N.T. had PFIFB in her blood. The analysis showed the concentration

of PFIBF in C.N.T.'s blood was approximately 1,000 times an amount fatal to adults. The autopsy performed on C.N.T. concluded that PFIBF poisoning was the cause, and homicide was the manner, of C.N.T.'s death. The Commonwealth arrested Appellant and charged her with homicide and EWOC.

While incarcerated, Appellant mentioned C.N.T.'s death to fellow inmates several times. Appellant commented to them about the nature of C.N.T.'s death. Appellant also made statements to an inmate that: she did not kill C.N.T.; she did kill C.N.T.; she did not mean to kill C.N.T.; C.N.T. was in Appellant's care when she died, so no one else could have killed C.N.T.; and C.N.T. did not die while Mr. Williams took care of her, so Mr. Williams could not be responsible for C.N.T.'s death. Appellant also told an inmate she "didn't want a damn girl anyway."

Appellant proceeded to a jury trial on May 28, 2019. On June 4, 2019, the jury convicted Appellant of one count each of involuntary manslaughter and EWOC. The court held a sentencing hearing on September 25, 2019. At the hearing, defense counsel asked the court to sentence Appellant within the guideline range based upon, inter alia: that this was Appellant's first criminal offense; Appellant's rehabilitative needs and age; that Appellant was employed and attending college classes at the time of the offense; Appellant's lack of a support system as a single mother; and that C.N.T.'s father abused Appellant. With the benefit of a presentence investigation ("PSI") report, the court sentenced Appellant to a term of five (5) to ten (10) years' incarceration.

The convictions merged for purposes of sentencing.

On October 4, 2019, Appellant filed a timely post-sentence motion, seeking leave to file an amended post-sentence motion within 30 days of receiving the trial notes of testimony. The court granted Appellant's request on October 17, 2019. On November 19, 2019, Appellant timely filed an amended post-sentence motion, which the court denied on November 26, 2019. Appellant filed a timely notice of appeal on December 2, 2019. The court ordered Appellant on December 5, 2019, to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b); Appellant timely complied on December 18, 2019.

Appellant raises one issue for our review:

> Was the [s]entencing [c]ourt's sentence of five to ten years of incarceration an abuse of its discretion in light of substantial mitigating evidence?

(Appellant's Brief at 3).

Appellant argues the sentencing court considered only the nature of the crime when it imposed her sentence. Appellant claims the court did not account for her character, her rehabilitative needs and potential to reform, and her nonexistent criminal history. Appellant asserts the court also failed to consider the need to protect the public and the impact of the offense on the community. Appellant contends the sentencing court did not recite its sentencing rationale on the record. Appellant submits the court imposed the statutory maximum sentence above the aggravated range, which she avers is

manifestly excessive and unreasonable. Appellant concludes this Court should vacate and remand for resentencing.

As presented, Appellant's claim challenges the discretionary aspects of sentencing. See Commonwealth v. Clarke, 70 A.3d 1281 (Pa.Super. 2013), appeal denied, 624 Pa. 671, 85 A.3d 481 (2014) (stating contention that court focused solely on serious nature of crime without adequately considering protection of public or defendant's rehabilitative needs concerns court's sentencing discretion); Commonwealth v. Holiday, 954 A.2d 6 (Pa.Super. 2008), appeal denied, 601 Pa. 694, 972 A.2d 520 (2009) (treating as challenge to discretionary aspects of sentencing, defendant's claim that sentencing court imposed manifestly harsh sentence contrary to sentencing code, where court sentenced defendant above aggravated range of sentencing guidelines, to maximum possible sentence under statute); Commonwealth v. Lutes, 793 A.2d 949 (Pa.Super. 2002) (stating claim that sentence is manifestly excessive challenges discretionary aspects of sentencing).

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. Commonwealth v. Sierra, 752 A.2d 910, 912 (Pa.Super. 2000). Prior to reaching the merits of a discretionary sentencing issue:

> [W]e conduct a four part analysis to determine: (1) whether appellant has filed a timely notice of appeal; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence; (3) whether appellant's brief has a fatal defect; and (4) whether there is a substantial question that the sentence appealed from is

not appropriate under the Sentencing Code.
Commonwealth v. Hyland, 875 A.2d 1175, 1183 (Pa.Super. 2005), appeal denied, 586 Pa. 723, 890 A.2d 1057 (2005) (internal citations omitted).

Under Pa.R.A.P. 2119(f), an appellant must invoke the appellate court's jurisdiction by including in her brief a separate concise statement demonstrating a substantial question as to the appropriateness of the sentence under the Sentencing Code. Commonwealth v. Mouzon, 571 Pa. 419, 812 A.2d 617 (2002); Pa.R.A.P. 2119(f). "The requirement that an appellant separately set forth the reasons relied upon for allowance of appeal furthers the purpose evident in the Sentencing Code as a whole of limiting any challenges to the trial court's evaluation of the multitude of factors impinging on the sentencing decision to exceptional cases." Commonwealth v. Williams, 562 A.2d 1385, 1387 (Pa.Super. 1989) (en banc) (emphasis in original) (internal quotation marks omitted).

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. Commonwealth v. Anderson, 830 A.2d 1013 (Pa.Super. 2003). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." Sierra, supra at 912-13. This Court does not accept bald assertions of sentencing errors as substantial questions. Commonwealth v.

Malovich, 903 A.2d 1247 (Pa.Super. 2006). Rather, an appellant must articulate the bases for her allegations that the sentencing court's actions violated the sentencing code. Id. A claim of excessiveness can raise a substantial question as to the appropriateness of a sentence under the Sentencing Code, even if the sentence is within the statutory limits. Mouzon, supra at 430, 812 A.2d at 624. Bald allegations of excessiveness, however, do not raise a substantial question to warrant appellate review. Id. at 435, 812 A.2d at 627. Rather, there is a substantial question "only where the appellant's Rule 2119(f) statement sufficiently articulates the manner in which the sentence violates either a specific provision of the sentencing scheme set forth in the Sentencing Code or a particular fundamental norm underlying the sentencing process...." Id.

"An allegation that a sentencing court failed to consider or did not adequately consider certain factors does not raise a substantial question that the sentence was inappropriate." Commonwealth v. Cruz-Centeno, 668 A.2d 536, 545 (Pa.Super. 1995), appeal denied, 544 Pa. 653, 676 A.2d 1195 (1996) (internal quotation marks omitted). For example, an allegation that the sentencing court ignored or did not accord proper weight to an appellant's rehabilitative needs does not raise a substantial question. Commonwealth v. Berry, 785 A.2d 994 (Pa.Super. 2001). On the other hand, "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question." Commonwealth

v. Raven, 97 A.3d 1244, 1253 (Pa.Super. 2014), appeal denied, 629 Pa. 636, 105 A.3d 736 (2014). See also Commonwealth v. Trimble, 615 A.2d 48 (Pa.Super. 1992) (holding defendant's claim that court failed to consider factors set forth under Section 9721(b) and focused solely on seriousness of defendant's offense raised substantial question). A substantial question also exists where an appellant alleges the court imposed a sentence outside of the guidelines without specifying sufficient reasons. Holiday, supra.

On appeal, this Court will not disturb the judgment of the sentencing court absent an abuse of discretion. Commonwealth v. Fullin, 892 A.2d 843 (Pa.Super. 2006).

> [A]n abuse of discretion is more than a mere error of judgment; thus, a sentencing court will not have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will. In more expansive terms, ...: An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> The rationale behind such broad discretion and the concomitantly deferential standard of appellate review is that the sentencing court is in the best position to determine the proper penalty for a particular offense based upon an evaluation of the individual circumstances before it. Simply stated, the sentencing court sentences flesh-and-blood defendants and the nuances of sentencing decisions are difficult to gauge from the cold transcript used upon appellate review. Moreover, the sentencing court enjoys an institutional advantage to appellate review, bringing to its decisions an expertise, experience, and judgment that should not be lightly disturbed. Even with the advent of the sentencing guidelines, the power of sentencing is a function

to be performed by the sentencing court. Thus, rather than cabin the exercise of a sentencing court's discretion, the guidelines merely inform the sentencing decision.

\* \* \*

[W]e reaffirm that the guidelines have no binding effect, create no presumption in sentencing, and do not predominate over other sentencing factors—they are advisory guideposts that are valuable, may provide an essential starting point, and that must be respected and considered; they recommend, however, rather than require a particular sentence. ...

Commonwealth v. Walls, 592 Pa. 557, 564-70, 926 A.2d 957, 961-65 (2007) (internal quotation marks, footnotes, and citations omitted).

[I]n exercising its discretion, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence that takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as the court also states of record the factual basis and specific reasons which compelled the deviation from the guidelines. This Court must remand for resentencing with instructions if we find that the sentencing court sentenced outside the guidelines and the sentence was unreasonable.

Commonwealth v. Kenner, 784 A.2d 808, 811 (Pa.Super. 2001), appeal denied, 568 Pa. 695, 796 A.2d 979 (2002) (internal citations omitted). See also 42 Pa.C.S.A. § 9721(b) (stating sentence imposed must be consistent with protection of public, gravity of offense as it relates to impact of life of victim and community, and rehabilitative needs of defendant); Commonwealth v. Fowler, 893 A.2d 758 (Pa.Super. 2006) (explaining where sentencing court had benefit of pre-sentence investigation ("PSI")

report, we can presume it was aware of relevant information regarding defendant's character and weighed those considerations along with mitigating factors).

Additionally, "[t]he Sentencing Code requires a trial judge who intends to sentence outside the guidelines to demonstrate, on the record, his awareness of the guideline ranges." Commonwealth v. Griffin, 804 A.2d 1, 7 (Pa.Super. 2002), appeal denied, 582 Pa. 671, 868 A.2d 1198 (2005), cert. denied, 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "[T]he sentencing judge must state of record the factual basis and specific reasons which compelled him…to deviate from the guideline ranges. When evaluating a claim of this type, it is necessary to remember that the sentencing guidelines are advisory only." Id. at 8.

Instantly, Appellant timely filed a notice of appeal, and preserved most of her sentencing arguments in a timely filed post-sentence motion and in a Rule 2119(f) statement. See Hyland, supra. Appellant, however, did not include in her post-sentence motion her claim that the court failed to place its reasons for imposing the sentence on the record. See id.; Pa.R.A.P. 302(a) (providing issues not raised before trial court are waived and cannot be raised for first time on appeal). See also Griffin, supra (explaining that sentencing claims not raised in post-sentence motion are waived and cannot be raised for first time on appeal). Appellant also failed to raise this argument in her Rule 1925(b) statement. See Commonwealth v. Castillo, 585 Pa. 395, 888 A.2d

775 (2005) (explaining general rule that issues not raised in Rule 1925(b) concise statement of errors will be deemed waived). Therefore, Appellant's claim that the court failed to recite its sentencing rationale on the record is not properly before us. See id.; Hyland supra; Griffin, supra; Pa.R.A.P. 302(a).

Appellant's claim that the sentencing court imposed an excessive sentence and failed to consider mitigating factors raises a substantial question. See Raven, supra. Additionally, Appellant's assertion that the court took into account only the seriousness of the offense poses a substantial question. See Trimble, supra. Likewise, if properly preserved, her argument that the court imposed a sentence outside the guidelines without placing reasons behind the sentence on the record would raise a substantial question. See Holiday, supra.

At sentencing, the court explained its sentencing decision, in relevant part, as follows:

> All right. [Appellant], I have considered the [PSI] report in this case, and I have considered, as well, the sentencing guidelines.
>
> I have considered the arguments made on your behalf by your lawyer, and I have considered the arguments made on behalf of the Commonwealth….
>
> I recognize you are not RRRI eligible. I further recognize that the count of Involuntary Manslaughter and the count of [EWOC] do merge for sentencing purposes in as much as they are predicated upon the same event.
>
> I will make the following conclusions, based upon not only

what was brought to my attention today, but also upon my notes and recollection of the case....

And I also had the opportunity to watch the video/audiotape recording of the various statements that you made to the detectives during the course of the investigation when they were desperately trying to go find out who was responsible for your daughter's untimely and tragic death.

I had the benefit of watching and listening to all of that. And no other [j]udge that will ever be involved in this case will have that same ability.

I must reject probation in this case because of both your character and the nature of the crime, and I do find that your crimes and the circumstances, especially that surround your commission and demand, correctional treatment can only be provided by commitment to a state institution.

I find that any lesser sentence would diminish the seriousness of the crimes with which you have been convicted.

And I find the confinement is required both to deter you and also to deter those who may be tempted to put themselves in a similar situation.

I also find that, if you were granted probation, there would be an undue risk during that period of probation that you would commit another crime.

I am considering, in addition, the violation of the trust that you held towards your daughter.

This child has no one here today to speak on her behalf except [the prosecutor], who never even met her, and only saw pictures of her after she was cold and dead.

[C.N.T.] is essentially just a forgotten victim here, but she looked to you, and to you only, as her source of safety and protection and support.

She was wholly dependent upon you, and you betrayed the trust that was your responsi[bility] to uphold.

I also find, I suppose, what could be classified as an expression of remorse. But, again, as I am the one who is in the [c]ourtroom right now, and I am the [j]udge that actually has the opportunity to witness you and observe you, I find that you[r] showing of remorse is nothing more than a box to be checked on your list of things to do when you show up at sentencing.

I find you to be a callous, cold-hearted and remorseless person, [Appellant]. This has been the theme that I have observed over the hours and the days that I was forced to sit in this chair and listen to your voice talking about an incident that another parent would be absolutely apoplectic about in a cold, calm and, frankly, aggressive and confrontational tone.

The interactions, especially, that you had with the detectives, who worked tirelessly and denied many other equally valid cases their expertise and time by [poring] hours and hours into this particular investigation was especially chilling.

And I do not think that that can translate for the Superior Court by a cold-hearted record. One would have to see it and hear it for their own selves.

I also reject any insinuation that this was somehow the fault of your then-boyfriend. Because I saw and heard [Mr.] Williams testify on the witness stand. He seems to me a very dull-witted and simple fellow, who was completely incapable of carrying out the poisoning that happened in this case, because there's really no other words for it.

You know, Fentanyl simply does not telekinetically levitate itself in to a sippy cup. And [Mr.] Williams has absolutely no reason to cause your child to ingest the Fentanyl.

I reject, and I believe that it's appropriate, based upon what I saw and heard to reject any insinuation that he is responsible for the child's death.

I also had an opportunity to listen and to witness the testimony of Ms. Austin, as well as Ms. Dearman. Two

individuals who you had confided in at Allegheny County Jail during your stay there about what happened to your child. And I found their testimony to be very telling.

And I believe [the prosecutor]'s explanation and characterization is accurate that you did slip a few times. And that other times you simply came out and basically said you didn't want that child, primarily because her father must be a difficult individual to get along with, I suppose.

Most importantly, however, in my consideration of the nature and substance that took your daughter's life. Doctor Xu, an experienced…forensic pathologist for nearly 11 years at the Allegheny County Medical Examiner's Office, testified that there were 1,100 nanograms of Fentanyl in this poor baby's blood.

And he testified that even 1.3 nanograms, that would be one-tenth of one percent of that amount would be enough to cause death in an adult.

I think the Detective's characterization and, frankly, yours that there was enough Fentanyl in that girl's system to kill a horse is absolutely accurate.

Dr. Xu indicated that this is the highest level of Fentanyl that his office has experienced in 10 years.

\*     \*     \*

This was a case where toxic poison was placed squarely in the way of your child and placed in an attractive nuisance.

What I mean by that, a sippy cup that she had continually looked to…grant her relief from thirst.

\*     \*     \*

But I want to make it clear that the sort of lackluster expression of remorse that you attempted to mouth piously today lies in the face of the true you that I got to see on the videos in this case where you try to come up with just about any explanation for your daughter's death except that you were responsible for it.

In fact, it's very telling that when the initial officers and the medics responded and attempted vainly to save your poor daughter's life, who was as good as dead at that point any way, unfortunately, because of the amount of Fentanyl that you allowed her to ingest, your response in large part was the following words during that very stressful situation where people are most likely to express their true feelings where you said:

"I can't get in trouble for this. This cannot be my fault. I am not going to get in trouble for this."

Your primary concern was for yourself. Your primary concern continues to be for yourself with very little or no thought for your child.

I find it especially disturbing that you found smoking marijuana to be more important than looking after the only child that it's likely you're ever going to have.

So, for all of those reasons, and I hope I have expressed myself adequately for the record, I am compelled to deviate upward from the guidelines.

And I do recognize, specifically, that the sentencing guidelines are the result of a painstaking process by the Commission that contemplates the prior records, the offense gravity and the statutory classification of this [f]elony of the [s]econd [d]egree.

However, in this case, the sentencing guidelines fall far short of any amount of justice for poor [C.N.T.]

As a result, I am going to impose the following sentence:

It is going to the sentence as to Count 1, Involuntary Manslaughter, that you serve not less than 5 or more than 10 years of incarceration at the State Correctional Institution at Muncy.

And it is the further order of Court that you are not RRRI eligible, and that you are responsible for the cost of this prosecution and all of the crime labs costs that went into

trying to figure out what happened to this poor child.

\* \* \*

(N.T. Sentencing, 9/25/19, at 10-19).

Here, the record makes clear the court considered not only the gravity of the offense, but also Appellant's character and disingenuous demonstration of remorse, as well as the need to deter other individuals from committing similar crimes in the community. See Kenner, *supra*; 42 Pa.C.S.A. § 9721(b). The court also took into account defense counsel's argument at sentencing, in which counsel beseeched the court to acknowledge Appellant's age, employment, education, rehabilitative needs, support system, and abusive relationship. See Kenner, *supra*; 42 Pa.C.S.A. § 9721(b). Additionally, the sentencing court had the benefit of a PSI report. So, we can presume the court considered and weighed the relevant information and mitigating factors. See Fowler, *supra*. Finally, even if Appellant had properly preserved her claim that the court did not place its rationale on the record before imposing a sentence outside the guideline range, she would not be entitled to relief. The court recited a detailed and thorough explanation of the facts and reasons underlying its sentencing decision. See Griffin, *supra*. Therefore, the court did not impose an unreasonable sentence and we see no reason to disrupt the court's broad sentencing discretion. See Walls, *supra*; Fullin, *supra*; Kenner, *supra*. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2020