J-S05019-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| RHAHEAM HILL | : | |
| | : | |
| Appellant | : | No. 1122 EDA 2025 |

Appeal from the Judgment of Sentence Entered December 9, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0001793-2023

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KING, J.: **FILED MARCH 27, 2026**

Appellant, Rhaheam Hill, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for attempted murder, aggravated assault, possessing instruments of crime ("PIC"), carrying a firearm without a license, two counts of recklessly endangering another person ("REAP"), and his guilty plea to persons not to possess a firearm.[1] We affirm and grant counsel's petition to withdraw.

The facts and relevant procedural history of this matter are as follows. In 2021, Evelyn Velazquez entered into a relationship with Appellant, and they ultimately had a baby girl together before ending their romantic relationship.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 901 (section 2502 related), 2702, 907, 6106, 2705, and 6105, respectively.

In February 2023, Appellant began to send Ms. Velazquez threatening, vulgar, and insulting text messages,[2] warning her to keep the baby away from her friends, admonishing her for not allowing him to see the baby, and expressing his belief that she was seeing someone else romantically. Ms. Velazquez responded that they were no longer in a romantic relationship and indicated that she was laughing at him. Appellant sent a barrage of increasingly vulgar and threatening messages, including a text sent on February 17, 2023, that stated, "You got a cold heart, bitch. You should be dead." (***See*** N.T. Trial, 9/25/24, at 44). Later that day, Appellant sent messages that included the sentences, "Watch when I find your van, you fucking snake…" (***See id.*** at 46). Ms. Velazquez did not respond.

Early in the morning of February 18, 2023, Appellant continued to send Ms. Velazquez threatening messages, including stating, "I'm on your ass…I guarantee I'll find you," and "[w]hore, I'll torture you [till] I die." (***Id.*** at 46-47). Ms. Velazquez did not respond. Around 5:00 p.m., Appellant sent Ms. Velazquez another vulgar message that concluded by stating, "Bitch, you gonna pay." (***Id.*** at 48).

Later that day, around 7:00 p.m., Ms. Velazquez was spending time with her daughter and her older brother, Luis Velazquez, at their mother's house. Mr. Velazquez invited his friend, Steeve Bissainthe, to hang out with them.

---

[2] Counsel stipulated that the cell phone possessed by Appellant at the time of his arrest was examined by police officers and all text messages presented at trial were fair and accurate. (***See*** N.T. Trial, 9/25/24, at 152-53).

Mr. Bissainthe asked for a ride, and Ms. Velazquez and Mr. Velazquez, along with Ms. Velazquez's daughter, went to pick Mr. Bissainthe up at the Berks train station. Ms. Velazquez was driving, Mr. Velazquez was in the front passenger seat, Ms. Velazquez's daughter was in a car seat on the driver's side rear seat, and Mr. Bissainthe was seated in the rear passenger seat. The group stopped at a store near Front Street and Rising Sun Avenue to buy candy.

As Mr. Bissainthe opened the door of the minivan, a gunshot rang out, and Mr. Bissainthe exclaimed that he had been hit. A second gunshot shattered the rear passenger side window. Ms. Velazquez's daughter, only a foot from Mr. Bissainthe, was scratched by flying glass. Mr. Velazquez turned around and saw Appellant, dressed in a dark hoodie, running down the street. Ms. Velazquez also saw and recognized Appellant, wearing a familiar blue Dickies jumpsuit. Mr. Velazquez cursed at Appellant and jumped back into the car. Ms. Velazquez drove away to look for help while Mr. Velazquez called 911 and attempted to put pressure on Mr. Bissainthe's wounds.

Police Officer Craig Pearce was on patrol on North Broad Street when Ms. Velazquez cut across traffic and pulled up beside him to beg for help. Officer Pearce observed Mr. Bissainthe, suffering from a gunshot wound to the neck, and immediately scooped him up and drove him and Mr. Velazquez to Einstein Medical Center. Mr. Bissainthe ultimately underwent multiple surgeries and survived his wounds, although he still requires a tracheostomy tube and is unable to participate in manual labor as he was before.

That same night, approximately an hour and a half after the shooting, Appellant sent a text message to his friend that stated, "Whatever happens, I just want to say thanks and I love you, Bro." (*See* N.T. Trial, 9/25/24, at 157). Appellant's friend responded, "You my bro. I got your back. Lay low for a while. Hopefully they keep quiet." (*See id.*). On February 19, 2023, at 9:00 a.m., Appellant sent Ms. Velazquez a message stating that he had gotten their daughter a coat, and that he had not seen her car by her home. Appellant inquired, "What's going on?" (*Id.* at 49).

When officers interviewed Ms. Velazquez and Mr. Velazquez at the hospital, both stated that Appellant had shot Mr. Bissainthe, although they identified him only by his nickname, "Chill." Detectives later identified, on video surveillance footage, images of Appellant getting into a car and fleeing. After running the tag and registration of Appellant's car, officers identified him as the suspect. Later, Ms. Velazquez identified Appellant as the shooter in a photo array. Ultimately, police officers executed a search warrant at Appellant's residence, placed him under arrest, and recovered and towed his vehicle.

On February 26, 2023, the Commonwealth filed a criminal complaint against Appellant. On April 4, 2024, Appellant filed a Rule 600 motion. On May 31, 2024, the trial court entered an order denying relief.

The matter proceeded to trial by jury. In addition to the eyewitness testimony of the Velazquez siblings, Mr. Bissainthe, and police officers, Appellant testified in his own defense. Appellant apologized for sending the

"weird messages" to Ms. Velazquez but explained that he was "addicted" to his daughter and had been "beefing" with Ms. Velazquez after their separation. (*See id.* at 199-200). Appellant testified that he was particularly angry that she had been spending time with Mr. Bissainthe. (*Id.* at 200-01). According to Appellant, in 2020, Mr. Bissainthe "stabbed" and "sliced" him in the stomach so severely that Appellant had to push his "guts" back in. (*Id.*). Appellant claimed that Mr. Bissainthe fled after the attack and left him to die. (*Id.* at 201).

Appellant further claimed that, on the night of the shooting, he approached Ms. Velazquez's van to offer her money if she needed it. (*See id.* at 211-12. Appellant then saw Mr. Bissainthe in the back seat of the van. (*Id.*). Appellant claimed that Mr. Bissainthe pulled out a gun, fired through the back window, and threatened to kill Appellant. (*Id.* at 213-14). Appellant stated that he attempted to point his gun at Mr. Bissainthe to scare him and wanted to flee before he "got hurt." (*Id.* at 216). Appellant denied shooting Mr. Bissainthe and, on cross examination, claimed that the gun "wasn't even operable." (*Id.* at 219-20). When asked about the muzzle flash captured on video, Appellant stated he did not know why the light would flash. (*Id.*).

Appellant went on to make several additional claims, including that Mr. Bissainthe had grabbed food dye or ketchup and put it on his body, and that the text messages to his friend were regarding another incident, unrelated to the shooting. (*Id.* at 221, 230-31). Nevertheless, Appellant admitted that he threw the firearm into the river.

On September 27, 2024, a jury convicted Appellant of the aforementioned charges, and Appellant entered a guilty plea to persons not to possess a firearm. On December 9, 2024, the court sentenced Appellant to an aggregate term of 27 to 54 years of incarceration.[3] That same day, Appellant filed a post-sentence motion, requesting reconsideration of his sentence due to mitigating factors. On December 27, 2024, trial counsel filed a motion stating that he had been informed by the Office of Disciplinary Counsel that Appellant wanted the motion to reconsider his sentence withdrawn and an appeal filed instead.[4] Nevertheless, the court denied Appellant's motion on April 28, 2025. That same day, Appellant filed a timely notice of appeal.

On April 29, 2025, the trial court appointed new appellate counsel. On June 4, 2025, appellate counsel filed a statement of intent to withdraw pursuant to Pa.R.A.P. 1925(c)(4). On August 8, 2025, the trial court filed a letter indicating that due to counsel's notice of intent to file a no-merit brief, it would not be filing a Pa.R.A.P. 1925(a) opinion.

_____

[3] At the sentencing hearing, the court observed that each individual sentence was within either the mitigated or standard guidelines range, though they were imposed consecutively.

[4] Throughout the case and particularly during the post-sentencing period, despite being represented by counsel, Appellant attempted to file numerous *pro se* motions and correspondences with the court. **See Commonwealth v. Williams**, 151 A.3d 621, 623 (Pa.Super. 2016) (explaining general rule that hybrid representation is not permitted; this Court will not accept *pro se* motion while appellant is represented by counsel; such *pro se* motions have no legal effect and are therefore legal nullities).

On September 21, 2025, counsel filed a petition to withdraw and *Anders* brief.[5]  On October 30, 2025, Appellant filed a *pro se* response.  On November 20, 2025, the trial court appointed new appellate counsel.  On December 29, 2025, new appellate counsel filed a letter indicating his review of the record, and his intent to adopt prior appellate counsel's *Anders* brief.  That same day, new appellate counsel filed a petition to withdraw together with a copy of his letter to Appellant, informing him of his appellate rights.

Preliminarily, current appellate counsel seeks to withdraw representation pursuant to *Anders* and *Commonwealth v. Santiago*, 602 Pa. 159, 978 A.2d 349 (2009).  *Anders* and *Santiago* require counsel to: (1) petition the Court for leave to withdraw, certifying that after a thorough review of the record, counsel has concluded the issues to be raised are wholly frivolous; (2) file a brief referring to anything in the record that might arguably support the appeal; and (3) furnish a copy of the brief to the appellant and advise him of his right to obtain new counsel or file a *pro se* brief to raise any additional points the appellant deems worthy of review.  *See Santiago, supra* at 173-79, 978 A.2d at 358-61.  "Substantial compliance with these requirements is sufficient."  *Commonwealth v. Reid*, 117 A.3d 777, 781 (Pa.Super. 2015).  After establishing that counsel has met the antecedent requirements to withdraw, this Court makes an independent review of the record to confirm that the appeal is wholly frivolous.  *Commonwealth v.*

---

[5] *See Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967).

**Palm**, 903 A.2d 1244, 1246 (Pa.Super. 2006).  **See also Commonwealth v. Dempster**, 187 A.3d 266 (Pa.Super. 2018) (*en banc*).

In **Santiago, supra**, our Supreme Court addressed the briefing requirements where court-appointed appellate counsel seeks to withdraw representation:

> Neither **Anders** nor **Commonwealth v. McClendon**, [495 Pa. 467, 434 A.2d 1185 (1981)] requires that counsel's brief provide an argument of any sort, let alone the type of argument that counsel develops in a merits brief.  To repeat, what the brief must provide under **Anders** are references to anything in the record that might arguably support the appeal.
>
> *       *       *
>
> Under **Anders**, the right to counsel is vindicated by counsel's examination and assessment of the record and counsel's references to anything in the record that arguably supports the appeal.

**Santiago, supra** at 176, 177, 978 A.2d at 359, 360.  Thus, the Court held:

> [I]n the **Anders** brief that accompanies court-appointed counsel's petition to withdraw, counsel must: (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous.  Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Id.** at 178-179, 978 A.2d at 361.

Instantly, appellate counsel's application to withdraw states that counsel has reviewed the record and determined that there are no non-frivolous

grounds for an appeal. Counsel subsequently sent a copy of the **Anders** brief to Appellant. Counsel also provided Appellant with a letter explaining Appellant's right to retain new counsel or proceed *pro se* to raise any additional points Appellant deems worthy of this Court's attention. In the **Anders** brief, counsel summarized the facts and procedural history of Appellant's case. The argument section of the brief cites to portions of the record that might arguably support Appellant's issues on appeal. Counsel also provides the reasons for his conclusion that the appeal is wholly frivolous. Therefore, counsel has substantially complied with the technical requirements of **Anders** and **Santiago**. **See Reid, supra**.

Appellant has responded to the **Anders** brief *pro se*.[6] Counsel raises the following issue on Appellant's behalf:

> I. Is there a meritorious claim that can be pursued on direct appeal?
>
> > a. Is the verdict against the weight of the evidence to

---

[6] In Appellant's *pro se* response, he does not address the issues raised in the **Anders** brief, but avers that he has been attempting to file petitions pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546, but is not in possession of his trial transcripts. There are limited circumstances in which a defendant may raise claims of counsel's ineffectiveness on direct appeal: "1) there is good cause shown, and (2) the unitary review so indulged is preceded by the defendant's knowing and express waiver of his entitlement to seek PCRA review from his conviction and sentence, including an express recognition that the waiver subjects further collateral review to the time and serial petition restrictions of the PCRA." **Commonwealth v. Holmes**, 621 Pa. 585, 598-99, 79 A.3d 562, 563-64 (2013). As these limited circumstances are not applicable here, we decline to review Appellant's *pro se* claims to the extent that they allege the ineffectiveness of counsel, which Appellant may choose to raise on collateral review.

such a degree that it shocks one's conscience?

b. Is the competent evidence of record legally sufficient to support the convictions in these matters?

c. Was appellant's cell phone unlawfully searched?

d. Did the trial court commit reversible error when it denied a motion to dismiss pursuant to Rule 600?

(**Anders** Brief at 4-5). In developing these issues, counsel also raises on Appellant's behalf arguments that Appellant sought to have raised, taken from both Appellant's post-sentence motions and conversations with Appellant.

In Appellant's first issue, he contends that the verdict is against the weight of the evidence. Appellant raises numerous arguments about the reliability of the evidence, including a lack of forensic testing of Mr. Bissainthe's clothing, purported perjury by Ms. Velazquez, a lack of ballistic evidence, and the time stamp on the body worn camera of the officer who drove Mr. Bissainthe to the hospital. Appellant concludes that this Court should award him a new trial on these grounds. We disagree.

Preliminarily, we observe that a challenge to the weight of the evidence must be preserved by a motion for a new trial. Pennsylvania Rule of Criminal Procedure 607 provides:

**Rule 607. Challenges to the Weight of the Evidence**

(A) A claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial:

(1) orally, on the record, at any time before sentencing;

(2) by written motion at any time before sentencing; or

(3) in a post-sentence motion.

Pa.R.Crim.P. 607(A)(1)-(3). "An appellant's failure to avail himself of any of the prescribed methods for presenting a weight of the evidence issue to the trial court constitutes waiver of that claim." ***Commonwealth v. Weir***, 201 A.3d 163, 167 (Pa.Super. 2018), *aff'd*, 662 Pa. 402, 239 A.3d 25 (2020). ***See also*** Pa.R.Crim.P. 607, *Comment* (stating: "The purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived").

Instantly, Appellant did not preserve his challenge to the weight of the evidence prior to sentencing, at sentencing, or in a post-sentence motion. ***See*** Pa.R.Crim.P. 607(A)(1)-(3). Therefore, Appellant's first issue on appeal is waived. ***See id.***; ***Weir, supra***.

In Appellant's second issue, he argues that the evidence was insufficient to support his convictions. Specifically, Appellant insists he did not fire the gun. Nevertheless, Appellant could not offer an explanation as to how Mr. Bissainthe had been shot. Further, counsel notes that Appellant now claims he was carrying a BB gun, and not a real firearm.[7] For these reasons, Appellant concludes that the evidence was insufficient to prove his identity as the man who had fired the shot that injured Mr. Bissainthe.[8] We disagree.

_____

[7] Appellant did not testify to this at trial.

[8] Additionally, Appellant argues that various Commonwealth witnesses had criminal records, biases, or were otherwise unreliable to establish a foundation
*(Footnote Continued Next Page)*

- 11 -

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that

---

to convict him. However, an argument that the finder of fact should have credited one witness' testimony over that of another witness goes to the weight of the evidence, not the sufficiency of the evidence. *See Commonwealth v. W.H.M.*, 932 A.2d 155, 160 (Pa.Super. 2007) (explaining claim that jury should have believed appellant's version of events rather than that of victim goes to weight, not sufficiency of evidence); *Commonwealth v. Wilson*, 825 A.2d 710, 713-14 (Pa.Super. 2003) (concluding sufficiency of evidence does not include assessment of credibility of testimony; such claim goes to weight of evidence); *Commonwealth v. Gaskins*, 692 A.2d 224, 227 (Pa.Super. 1997) (stating credibility determinations are made by finder of fact and challenges to those determinations go to weight, not sufficiency of evidence).

Likewise, Appellant's claim that there were discrepancies in the testimony of the Commonwealth's witnesses, or that the jury should have credited his testimony rather than their testimony, is not a proper challenge to the sufficiency of the evidence; rather, this claim implicates the weight of the evidence. *See W.H.M.*, *supra*; *Wilson*, *supra*; *Gaskins*, *supra*. Because Appellant did not preserve a challenge to the weight of the evidence before the trial court, however, that claim is waived on appeal. *See* Pa.R.Crim.P. 607(A); *Weir, supra*.

the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

"[A] perpetrator's identity may be established with circumstantial evidence." *Commonwealth v. Dunkins*, 229 A.3d 622, 632 (Pa.Super. 2020), *cert. denied*, ___ U.S. ___, 142 S.Ct. 1679, 212 L.Ed.2d 584 (2022). "This Court has recognized that 'evidence of identification need not be positive and certain to sustain a conviction.'" *Id.* (quoting *Commonwealth v. Ovalles*, 144 A.3d 957, 969 (Pa.Super. 2016)).

Instantly, the Commonwealth introduced the following evidence to establish Appellant's identity as the perpetrator of the crimes. Prior to the shooting, Appellant sent vulgar and threatening text messages to Ms. Velazquez. Both Mr. and Ms. Velazquez saw and identified Appellant as he approached the car. Appellant was captured on surveillance video with a muzzle flash emitting from the gun. A gunshot struck and wounded Mr. Bissainthe. After the shooting, Appellant sent text messages to his friend, indicating that whatever happened, he was grateful for their friendship. Police

- 13 -

officers were able, from video, to run Appellant's license plate number and identify his car fleeing from the scene. Viewed in the light most favorable to the Commonwealth as verdict winner, the Commonwealth presented sufficient evidence to establish Appellant's identity as the perpetrator of the crimes beyond a reasonable doubt. *See Dunkins, supra*. *See also Sebolka, supra*.

In Appellant's third issue, he argues that his cell phone was unlawfully searched. However, because Appellant did not file a suppression motion challenging the search of the cell phone, this claim is waived.[9] *See generally Commonwealth v. Malloy*, 579 Pa. 425, 444, 856 A.2d 767, 778 (2004) (explaining that appellant's failure to preserve issue in suppression motion deprives this Court of trial court's review of issue); *see also* Pa.R.A.P. 302 (stating: "Issues not raised in the lower court are waived and cannot be raised for the first time on appeal").[10]

---

[9] On September 18, 2023, the trial court received a letter from Appellant indicating that he wished to file a motion to suppress the evidence as well as motions to quash and for return of property. (*See* Motion to Suppress, 9/18/23). Nevertheless, because Appellant was represented by counsel at the time, this was impermissible hybrid representation. *See Williams, supra*.

[10] Counsel submits one additional suppression issue raised by Appellant in correspondence with counsel. Appellant wished to assert a violation pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978) because, according to Appellant, police officers lied in the search warrant affidavit. (*See Anders* Brief at 28 n.17). Appellant asserted that the affidavit of probable cause incorrectly stated that the complainant was shot in the chest, when he was actually shot in the neck. (*See id.*). Nevertheless, we reiterate that because no suppression motion raising this issue was filed
*(Footnote Continued Next Page)*

Finally, Appellant argues that the trial court committed reversible error when it denied his motion to dismiss all charges pursuant to Rule 600. We disagree.

The following principles apply to our review of a speedy trial claim:

> Our standard of review in a Rule 600 issue is whether the trial court abused its discretion. Our scope of review when determining the propriety of the trial court is limited to the evidence in the record, the trial court's Rule 600 evidentiary hearing, and the trial court's findings. We must also view the facts in the light most favorable to the prevailing party[.]

*Commonwealth v. Risoldi*, 238 A.3d 434, 449 n.14 (Pa.Super. 2020), *appeal denied*, 664 Pa. 562, 244 A.3d 1230 (2021).

> [T]he most recent version of Rule 600 …. provides that "[t]rial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed." Pa.R.Crim.P. 600(A)(2)(a). Further, "periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence," while "[a]ny other periods of delay shall be excluded from the computation." Pa.R.Crim.P. 600(C)(1). A defendant who has not been brought to trial within the time specified in Rule 600(A) may, at any time prior to trial, "file a written motion requesting that the charges be dismissed with prejudice on the ground that [the] rule has been violated." Pa.R.Crim.P. 600(D)(1). If the trial court determines that the Commonwealth violated Rule 600, it shall dismiss the charges and discharge the defendant.

*Commonwealth v. Harth*, 666 Pa. 300, 324-25, 252 A.3d 600, 615 (2021).

---

before the trial court, the issue is waived. *See Malloy, supra*; Pa.R.A.P. 302(a).

Thus,

> [i]n a Rule 600 analysis, the "mechanical run date" is 365 days after the complaint was filed. [Pa.R.Crim.P. 600(A)(2)(a)]. The "adjusted run date" is then calculated by adding any time that is "excluded from the computation" under Rule 600(C)(1). If a defendant is not brought to trial by the adjusted run date, the case is dismissed.

*Commonwealth v. Malone*, 294 A.3d 1247, 1249 (Pa.Super. 2023) (some citations omitted).

> Notably, when a Rule 600 motion is filed before trial commences, "Rule 600 is examined as of the date the Rule 600 motion is filed, since logically, a trial date cannot be used as no trial has commenced." [*Commonwealth v. Dunmore*, 324 A.3d 1, 7 (Pa.Super. 2024)]. Accordingly, "[i]n those instances, our case law has held that to obtain relief under Rule 600, the defendant must have a valid Rule 600 claim at the time he files the motion to dismiss the charges." *Id.* (citation omitted). A Rule 600 claim is not valid if it is premature, *i.e.*, if the Rule 600 motion is filed before the adjusted run date has passed. *See Commonwealth v. Hyland*, 875 A.2d 1175, 1191 (Pa.Super. 2005).

*Commonwealth v. Rice*, 331 A.3d 5, 10 (Pa.Super. 2025).

Instantly, the Commonwealth filed a criminal complaint against Appellant on February 26, 2023. Accordingly, the mechanical run date was February 26, 2024. Looking at excludable periods, on April 21, 2023, the parties appeared for a status hearing, at which the Commonwealth stated that it was waiting for medical records which it would pass as soon as it received them. (*See* N.T., 4/21/23, at 1-4). At that time, the trial court offered March 4, 2024 as a trial date; however, Appellant's counsel was not available, so the parties mutually agreed to a trial date of March 11, 2024. (*See id.*) Thus, the

- 16 -

14 days between February 26, 2024, and March 11, 2024, were excludable, resulting in an adjusted run date of March 11, 2024.

On March 11, 2024, the docket indicates that the jury trial was continued to March 12, 2024, by joint request and, on March 12, 2024, the court requested a continuance due to the judge presiding over another trial. These two days are thus excludable, making the adjusted run date March 13, 2024. On March 13, 2024, the docket indicates that the judge was still presiding over another trial and no other judge was available to hear the case; trial was rescheduled to June 11, 2024, with that time ruled excludable. Appellant did not object.[11] The adjusted run date, at that time, was June 11, 2024.

On April 4, 2024, prior to the adjusted run date, Appellant filed a motion seeking to dismiss the charges pursuant to Rule 600. The Commonwealth filed a brief in opposition to his motion, and the court denied the motion on May 31, 2024. Appellant did not renew his Rule 600 motion to dismiss charges due to a speedy trial violation at any point after that denial. On this record, Appellant does not have a valid Rule 600 claim, and the court did not abuse its discretion by denying relief. **See Rice, supra**; **Risoldi, supra**. Our

---

[11] The Commonwealth's brief in opposition to Appellant's Rule 600 motion includes a transcript of testimony from the March 13, 2024 status conference, in which defense counsel indicated that June 11, 2024 was a good date for him. (**See** Brief in Opposition to Motion to Dismiss, 5/8/24, at Ex. 4). This transcript does not otherwise appear in the certified record. Nevertheless, the docket also indicates that the trial was continued to June 11, 2024, and the time marked excludable.

independent review of the record does not reveal any additional, non-frivolous issues.  ***See Palm, supra***.  Accordingly, we affirm and grant counsel's petition to withdraw.

Judgment of sentence affirmed.  Petition to withdraw is granted.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/27/2026